## Commonwealth *versus* National Mutual Aid Association.

1. A mutual aid association of the state of Ohio is not a foreign insurance company, within the meaning of the Act of April 4th 1873, and is not liable to the penalty imposed by said act on foreign insurance companies for transacting business within this state without authority of law.

2. Said association is within the exception contained in the 54th section of the Act of May 1st 1876, which divests the control of the insurance commissioner over " beneficial associations."

3. *It seems*, that the insurance commisioner has no authority to make a settlement for penalty against a foreign insurance company without first giving the company notice of his intention to make it.

May 17th 1880. Before MERCUR, GORDON, PAXSON, TRUNKEY and STERRETT, JJ. SHARSWOOD, C. J., and GREEN, J., absent.

Error to the Court of Common Pleas of *Dauphin county:* Of May Term 1880, No. 204.

This was an appeal of the National Mutual Aid Association of Columbus, Ohio, from the settlement of the insurance commissioner and state treasurer, to the Court of Common Pleas of Dauphin county.

The insurance commissioner of this Commonwealth settled an account, which was approved by the state treasurer, for penalty of $1000, incurred by the National Mutual Aid Association of Columbus, Ohio, which did business as an insurance company, as the Commonwealth claimed, without having received authority for that purpose from the commissioner.

The Commonwealth sought to impose upon the association a penalty of $500 for transacting said business in December 1879. The business complained of was the admission of Louis N. Kramer of Scranton, Pa., to membership in said association.

Proceedings were also instituted against S. A. Hollister, agent, to recover a like penalty of $500 for forwarding to the association the application of Kramer for membership.

The appeal and specifications of objections .by the association were as follows :

1. The settlement is erroneous and illegal because the said association did not, during the months of December 1879, and January 1880, or either of them, transact any business within the state of Pennsylvania for which any authority from the insurance commissioner, under the Act of April 4th 1873, was requisite, and it is, therefore, not liable for the whole, or any part, of the penalty in said settlement charged.

2. The association is not an insurance company, and is, therefore, not subject to the provisions of the Act of April 4th 1873, nor to any of the penalties prescribed by the said act, and the said

13 NORRIS—31

[Commonwealth *v.* Nat. Mut. Aid Association.]

settlement hereby appealed from is erroneous and illegal, because it charges the said association with such a penalty.

3. The association is excepted out of the operations of the Act of April 4th 1873 by the terms of the supplement to said act, approved May 1st 1876, particularly by the fifty-fourth section thereof, in which it is enacted that "this act, and the act to which this is a supplement, shall not apply to the beneficial associations that provide aid for the family or heirs of a deceased member, whether issuing policies containing a guaranteed sum of insurance or not, nor to associations issuing policies not containing a guaranteed sum of insurance." The transaction of business for the said association requires no authority from the insurance commissioner under the Act of April 4th 1873, and the said settlement hereby appealed from, because it charges said association with a penalty for transacting business without such authority is erroneous and illegal.

4. The association had complied with the requirements of the Act of April 22d 1874, and was in the months of December 1879, and January 1880, and still is, duly authorized to do business in the state of Pennsylvania, and the said settlement, hereby appealed from, is erroneous and illegal, because therein a penalty is charged for the transaction of business duly authorized by law.

5. The said settlement is erroneous and illegal, because the insurance commissioner, not having previously notified the association or any officer or agent thereof to pay the said penalty, he was not authorized by law to settle any account whatever, or commence any proceeding against the said association.

6. The said settlement is erroneous and illegal, because there is no authority of law for the charge of $1000 therein made, and the association is not bound to pay the same, or any part thereof.

The insurance commissioner of the Commonwealth of Pennsylvania is authorized by the Act of Assembly of 4th April 1873, Pamph. L. 1873, p. 20, to settle and collect penalties against insurance companies and insurance agents for transacting business within this state without authority of law.

The sections which confer upon him this power are the 14th and 15th sections, and they contain this language, viz. :

Sect. 14. That any person or persons, or corporation, receiving premiums, or forwarding applications, or in any other way transacting business for any insurance company or association not of this state, without having received authority agreeably to the provisions of this act, shall forfeit and pay to the Commonwealth the sum of $500 for each month, or fraction thereof, during which such illegal business was transacted, and any company not of this state doing business without authority, shall forfeit a like sum for every month, or fraction thereof, and be prohibited from doing business in this state until such fines are fully paid.

Sect. 15. The taxes, fines and penalties provided in this act shall, in case of non-payment, after notice from the commissioner, be collected as taxes upon corporations or individuals are now collected by law, and for this purpose the insurance commissioner shall have all the powers now conferred by law upon the auditor-general in the settlement of accounts, subject, however, to the approval of the state treasurer, and to the right of appeal as in other cases.

Under the authority of these sections the insurance commissioner upon the 4th of February 1880 settled the account against the association for the sum of $1000, for "transacting business during the month of December 1879, in the state of Pennsylvania for an insurance company not of this state, entitled the 'National Mutual Aid Association,' of Columbus, Ohio, without having received authority agreeably to the provisions of said act."

This account was, on the same day, approved by the state treasurer.

The *narr.* and plea were in debt. The case was tried by the Court of Common Pleas, without a jury, under the provisions of the Act of April 22d 1874.

The court, Pearson, P. J., found the facts as follows :—

"This proceeding was commenced by a settlement or decree made by the insurance commissioner and state treasurer againt S. A. Hollister and 'The National Mutual Aid Association of Columbus, Ohio,' for penalties on account of alleged violation of the laws regulating insurance in Pennsylvania, all of which sufficiently appears in the *narr.* and other papers on file. We find the penalties are both incurred for doing the same act; if a recovery can be had against the one party, it can against the other also. In investigating the law and facts of this case, we shall treat of the complaint against the corporation alone.

"We find from the facts proved, that 'The National Mutual Aid Association of Columbus, Ohio,' is a corporation created by the laws of that state for the purposes and with the powers mentioned in its charter. That it has no fixed or permanent capital, is not bound to pay any certain sum for the benefit of the heirs, widow or devisees of a member on his death, but to act as agents in collecting one dollar from each member then living, so far as the same can be obtained, and to pay over eighty-five per cent. of each sum thus collected. That the initiatory fee of ten dollars is not in the nature of a premium exacted to pay losses, but to cover expenses of all kinds, such as office rent, counsel fees, clerk hire, for agents, &c. ; that said corporation was created under the Act of April 20th 1872, as amended by the Act of April 3d 1875 (Pamphlet Laws of Ohio), and that there is another general law of that state regulating life insurance on wholly different principles, requiring a

[Commonwealth *v.* Nat. Mut. Aid Association.]

large and fixed capital, well secured, enacted on the 27th of April 1872.

" We further find that under the laws of Pennsylvania, this would be considered a beneficial association to provide aid for the family and heirs of a deceased member, and is not an association issuing policies containing a guaranteed sum of insurance, and that the policy issued to Louis N. Kramer, on account of which this suit was instituted, is in the nature of one by a mere beneficial association, and is not for a fixed and definite sum of money in case of death.

" We find that this corporation of Ohio is in the nature of a mere aid society ; that there is no fixed sum for insurance, but the amount which may be collected and paid over is entirely uncertain, and that it has no fixed capital, and received no certificate or license from the insurance commissioner to transact business in this state.

" But we further find that on the 14th day of November 1879, it gave notice in due form to the secretary of the Commonwealth, showing its title and object, the location of its office, and names of its authorized agents, and obtained the certificate of the secretary under the seal of the Commonwealth of the filing of such statement.

" We find that neither the insurance commissioner or state treasurer gave any notice to ' The National Mutual Aid Association of Columbus, Ohio,' or to S. A. Hollister, of the time and place when the penalties would be collected from them, or either of them, but the same was settled and adjudged against them without any previous notice whatever, but some time after this was done, they were both duly served by mail with notice that the same had been settled against them, in time for each to take an appeal, which was done. The foregoing we find to be the facts proved, the evidence of which is to be found in the notes of testimony, the various documents given in evidence, and the Pamphlet Laws of the state of Ohio."

The conclusions of law, of the court, were as follows : " The facts, if correctly found in the present case, go far in determining the law which must govern it. We have found that the company sued is not technically a mutual life insurance company, but is no more than ' a mutual aid association,' of which we have hundreds in Pennsylvania, generally on a smaller scale than the defendant, but of the same general character. We have beneficial associations all over the manufacturing or mining portions of the state, generally incorporated, and long in existence. One, at least, in our vicinity starting with a thousand members, each agreeing to pay one dollar on the death of a member towards relieving his family, kindred or legatees. No one thought of their being insurance companies, or coming under the jurisdiction of our insurance commissioner. It is obvious that the same is the case in the state of

Ohio. They are there created by different laws, passed within a few days of each other, yet entirely different in their provisions and structure. That state, like our own, has an insurance commissioner, with laws similar to ours, yet their Supreme Court has decided that companies incorporated, as the one under consideration, for ' mutual protection' is not an insurance company. True, that would not be binding in our state if the company came within our laws, yet, in our opinion, it does not.

" The company has no capital, it is not bound to pay any fixed sum on the death of a member, but only so much as is voluntarily paid by those surviving, from whom there is no means of collecting by law, and of the sums thus paid fifteen per cent. is to be retained to cover expenses. The company considers itself merely the agent to collect and receive the money from living members for the use of the deceased. In the State of Ohio v. The Mutual Protective Society, the Supreme Court of that state decided, in 26 Ohio Rep. 19, that a company precisely like this was not a mutual insurance company. This brings the company within the 54th section of the Act of May 1st 1876, which entirely takes away the jurisdiction of our insurance commissioner from all control over ' beneficial associations,' of which we deem this to be one. Therefore the action of that officer was *coram non judice.*

" It is urged, however, that this section applies to domestic companies alone, not to foreign. It is very general in its expressions, covers all, and we can see no reason for so limiting it. We are told that this section was not in the original bill as presented, but was inserted by the legislature on its passage. If so, it showed that the law-making power considered the bill too general, and required restriction, therefore the section should receive the more extended construction, so as to effect the intention.

" It is obvious from the whole evidence that this company did not designedly violate our laws. It had, as a corporation, reported itself to the secretary of the Commonwealth, and obtained his certificate. It could find nothing in our laws which would establish it an insurance company, even of the mutual character. It was clearly no more than a ' mutual aid association,' by the laws of Ohio, and was not obliged to obtain the certificate of the insurance commissioner by the laws of Pennsylvania. It was therefore, to say the least of it, *harsh* to inflict the penalty on the company and its agent. It was unlawful.

" There is another point which must be settled eventually, and may as well be done in this case. The insurance commissioner claims the power to make a decree ex parte, which he calls a settlement, against both the company and the individual that they shall pay the amount of the penalty imposed by law for transacting business in this state without his license; this without any previous notice or claim. We do not believe that the legislature ever

so intended. It is so claimed because it is said that the auditor general has such power under the Act of 1811. On carefully reading that law it might well be doubted whether it was so intended in regard to anything but the settlement of taxes and the failure to make reports. The discretionary power is clearly given to that department to so settle accounts for taxes, when from the smallness of the claim or other causes it is deemed expedient, from which the practice has grown up so to do in all cases, and it is now clearly settled that the right exists, and that the settlement is conclusive unless appealed from within thirty days after notice. But we are not at present aware of any case where this has been applied to the recovery of a bare naked penalty. On reading the act we find great pains taken to enable the auditor general to compel the attendance of parties, production of books and papers, &c., and although power to impose penalties is conferred in some cases, yet they contemplate notice.

" The insurance commissioner and state treasurer, perhaps, have the same power under the fifteenth section of the Act of April 4th 1873, as the auditor general, yet that section declares that fines and penalties provided for in this act shall, in case of non-payment after notice from the commissioner, be collected as taxes upon corporations or individuals. Yet the ground on which companies and officers are bound to ex parte settlements without notice and held liable, as decided in several cases, is, that they take their charters and commissions with notice that the power is so conferred; yet that can scarcely apply to those created by the laws of other states or to private individuals. It may be well questioned whether, under the Constitution of this state, such power can be conferred. It is not proceeding by due course of law. We cannot help doubting whether the legislature ever intended to authorize the recovery of these large penalties without notice, hearing or trial, and in the present case we think that notice was expressly required. For this reason, as well as those already given, we are of the opinion that the state is not entitled to recover either of the penalties claimed, and shall give judgment against the state in both cases."

The Commonwealth excepted to the findings of fact and the conclusions of law, the exceptions reciting portions of the foregoing findings of facts and law. Argument being waived on the exceptions the court overruled them, and ordered judgment to be entered according to the decision filed. The Commonwealth then took this writ, and assigned this action of the court for error.

*Lyman D. Gilbert*, Deputy Attorney-General, and *Henry W. Palmer*, Attorney-General, for the Commonwealth.—The legislature has power to exclude all foreign corporations from its soil, or to impose such conditions as it may see proper upon them in the

transaction of their business within her limits: Bank of Augusta v. Earle, 13 Peters 519. The legislature of this Commonwealth, by the Acts of 4th April 1873, Pamph. L. 20, and 1st May 1876, Pamph. L. 53, has established an insurance system, and has excluded from this state foreign insurance companies which were unable to comply with the requirements of these Acts of Assembly.

The Act of 1873 prescribes the terms and conditions under which companies of other states may engage in the business of life insurance or assurance within this state. They must have certain assets to enable them to meet their liabilities at maturity, and must obtain the certificate of the insurance commissioner, showing that these conditions have been complied with. This act excludes all companies unable to comply with these conditions, without reference to the particular plan or system upon which their business may be conducted. It prescribes a rule of solvency for all companies, and debars all others which cannot conform to it.

If the words "beneficial association" can be construed to cover the case of this company then why not that of the Mutual Life Insurance Company of New York, the largest company in the country, which is purely mutual, and is beneficial, if any company is. Every argument in behalf of the defendant company is an argument for the free admission of all life companies. We contend this is an insurance company within the meaning of our insurance system. It possesses franchises which make it an insurance company within the letter and spirit of our laws. Its corporate privileges are to be considered in deciding to what class of corporations to assign this company.

The notice to be given by the insurance commissioner was not of an intention but of an act, and it was not to precede the settlement or statement of an account, but only its collection.

In Commonwealth v. Runk et al., 2 Casey 235, it was expressly decided that "in a settlement made by the auditor general and state treasurer, under the Act of 30th March 1811, of the taxes due by a corporation, it is not necessary that a preliminary notice of the time of settling an account shall be given."

In Germania Life Insurance Company v. Commonwealth, 4 Norris 513, this court decided the express point that the insurance commissioner has the power of the auditor general to settle accounts. We, therefore, submit that the insurance commissioner is not required by any rule of law to give notice of his intention before he settles an account for penalties; that the Act of 22d April 1874, Pamph. L. 108, did not and was not designed to remove restrictions imposed upon the transaction of business within this state by foreign insurance companies; that this association is both by its charter and its system of business a foreign insurance company, prohibited from doing business within this Commonwealth because

it cannot give such guarantees of solvency as the law exacts of foreign companies; and that having, without authority of law, transacted business as a life insurance company is liable to the penalties as stated in the settlement made against him.

*M. E. Olmsted* and *J. W. Simonton*, for defendant in error.— The association falls within both clauses of the exception in the Act of 1876. First, it is "a beneficial association that provides aid for the family or heirs of a deceased member;" and secondly, its certificates, if they may be called policies at all, are "policies not containing a guaranteed sum of insurance."

It is contended that this supplementary act does not apply to foreign aid associations, because only foreign insurance companies are mentioned in its title. In this we concur. There was no occasion for mention in the title of companies to which the act was not intended to apply, but lest the term "insurance companies" should be construed to embrace aid associations, the fifty-fourth section was inserted for the express purpose of manifesting the legislative intention to exclude them entirely from the operation of the insurance laws.

Sect. 15, of the Act of 1873, provides that the taxes, fines and penalties imposed by said act shall in cases of non-payment, *after notice from the commissioner,* be collected, &c. In this case no notice had been given, and consequently, the commissioner was not authorized to treat this penalty as a tax and settle an account for it.

The settlements made under the Act of 1811, in the cases referred to by plaintiff in error, were for taxes, for the settlement of which a time was fixed by law, and of which parties were required to take notice. The Act of Assembly did not in express terms require the auditor general to give any notice, but even under that act, where no definite time of settlement was fixed in the act, it was held by this court in Commonwealth *v.* Fitler, 12 S. & R. 279, that a settlement by the auditor general could not be sustained unless previous notice had been given to the party.

The judgment of the Supreme Court was entered, May 31st 1880,

Per Curiam—This is an attempt to impose a penalty on the defendant for an alleged violation of the laws regulating insurance companies in this Commonwealth. It is a corporation created by the laws of the state of Ohio. Although it possesses some of the features of an insurance company, yet it is there held not to be a mutual insurance company: State of Ohio *v.* Mutual Protective Society, 26 Ohio Rep. 19. It is substantially a beneficial or mutual aid association. It has no fixed capital. It is not bound to pay any fixed sum on the death of a member, but so much only as may volun-

[Commonwealth v. Nat. Mut. Aid Association.]

tarily be paid by the surviving members. It cannot be enforced by law. Each person is required to pay a fee of ten dollars on his admission as a member: but " no assessments can be made for carrying on the business of the association." The effort is to make it liable under the provisions of the Act of 4th April 1873, yet it is clearly excepted from the operation of that act by the Act of 1st May 1876, Pamph. L. 53. The fifty-fourth section of the latter act declares that " this act and the act to which this is a supplement, shall not apply to the beneficial associations that provide aid for the family or heirs of a deceased member, whether issuing policies containing a guaranteed sum of insurance or not, nor to associations issuing policies not containing a guaranteed sum of insurance." The defendant is clearly within this exception. It is held not to be an insurance company in the state where it is created, and even if we were to think otherwise here, yet it is not that kind of a company so as to subject it to the penalty prescribed by the Act of 1873.

Judgment affirmed.