## VON THODOROVICH v. FRANZ JOSEF BENEFICIAL ASS'N.

### (Circuit Court, E. D. Pennsylvania. July 12, 1907.)

### No. 29, April Session, 1907.

1. INJUNCTION—PERSONAL RIGHTS—PERSONAL PRIVACY.

The right of the emperor of Austria-Hungary to restrain a beneficial association, doing business in the United States, from using his name and portrait in advertising its business, because such use is offensive to the emperor, is personal to him, and cannot be availed of in a suit in the federal court for such relief by the imperial and royal consul of such country residing in the United States.

2. CONSULS—PROTECTION OF ALIENS—RIGHTS OF CONSUL—TREATIES.

Under Austrian treaty of June 27, 1871, providing that consuls general, consuls, vice consuls, and consular agents of the two countries, in the exercise of their duties, may apply to the authorities within their district for the protection of the rights of their countrymen, the imperial and royal consul of Austria-Hungary is entitled to maintain a suit in the federal courts to restrain a Pennsylvania beneficial association from using the name of the Austria-Hungarian emperor as a part of its corporate name and his portrait as a part of its advertising literature for the false and fraudulent purpose of inducing subjects of the emperor resident in the United States to believe that the association is conducted under the customs of their home country, and that their emperor is identified with and a patron thereof.

3. INJUNCTION—GROUNDS—FRAUD—CORPORATE NAME.

Where a beneficial association uses the name and portrait of the emperor of Austria in connection with the association, for the purpose of deceiving ignorant immigrants and leading them to believe that the association is under the special patronage of the emperor, and there are other fraudulent misstatements as to the origin and financial standing of the company, including a picture of an imposing building in a large city alleged to be the home office of the association, whereas, defendant occupies two small furnished rooms, an injunction will be granted restraining the use of the name and portrait of the emperor and from doing anything tending to induce the public to believe the business carried on by the association has any relation, official or otherwise, with the emperor.

In Equity. On motion for preliminary injunction.

Adolph Eichholz, for plaintiff.
Henry J. Scott, for defendants.

ARCHBALD, District Judge.[1] This is a bill brought by the imperial and royal consul of Austria-Hungary, located at Philadelphia, to restrain the defendant company, its officers and agents, from making use of the name or portrait of the Emperor Franz Josef, or from representing or doing anything to induce the belief that the business conducted by the company has any official or other relation with such

[1] Specially assigned.

emperor. The company was incorporated in 1887 by the court of common pleas No. 2, of Philadelphia, as a beneficial association, under the general corporation act of the state of Pennsylvania of April 29, 1874 (P. L. 73), which, among other things, allows (section 2) the formation of corporations for "the maintenance of a society for beneficial or protective purposes to its members, from funds collected therein;" and it was subsequently merged with the Panonia Beneficial Association, thereafter apparently losing its identity and ceasing to exist as a separate organization. Within the last year, however, in some way which is not disclosed, the individual defendants, who are its officers, have got hold of the charter and are carrying on a life insurance business under it, soliciting the patronage of persons of German, Hungarian, Polish, and Slavish birth, who have emigrated to the United States from Austria-Hungary, and are subjects of the Emperor Franz Josef; it being represented to them, in that connection, that the association is under his special patronage and has his imperial sanction and concern, of which the use of his name to designate the association, and the adoption of his portrait as a part of the corporate seal, is a direct assurance, according to the customs of the country from which they come. National feeling and loyalty to the emperor are thus played upon to further the business of the association, the deceptive and fraudulent character of which, as it is claimed, is evidenced not only by these misstatements, but by others as to its original organization, age, and present financial standing, in line with which the imposing building of the Liverpool, London & Globe Insurance Company, on Walnut street, Philadelphia, where the defendants occupy two small and scantily furnished rooms, is pictured and palmed off as the home office of the association. Feeling that his countrymen are being deceived and cheated and are in need of his assistance and protection, the present bill has been filed, and an injunction is sought by the consul to put an end to these practices.

The right of the consul to intervene in this way is challenged upon several grounds. The whole basis of the bill, as it is said, is the use of the emperor's name, which, except sentimentally, is no concern of the consul; the breach of privacy involved, if any, being a personal matter, which the emperor himself must go about to redress, and not the consul. And against this, moreover, as it is claimed, equity will not relieve even as to an ordinary individual (Robertson v. Rochester Folding Box Co., 171 N. Y. 538, 64 N. E. 442, 89 Am. St. Rep. 828, 59 L. R. A. 478; Atkinson v. Doherty & Co., 121 Mich. 372, 80 N. W. 285, 46 L. R. A. 219, 80 Am. St. Rep. 507), much less one standing in the public eye like the emperor. Corliss v. Walker Co., 57 Fed. 434, 64 Fed. 280, 31 L. R. A. 283. But without assenting to all that is so said, it is correct to the extent, that, if the use of the emperor's name, in connection with the defendant association, is offensive to the emperor or his subjects, it is not for the consul to remedy it. The Anne, 3 Wheat. (U. S.) 435, 4 L. Ed. 428. But that is not material, not being the basis of the present bill. The consul, in other words, does not come into court in the name or on behalf of the emperor. He is here professedly and distinctly to prevent the misleading and defrauding of his countrymen, and for this he has express sanction. By treaty between the United

States and the emperor of Austria ratified June 27, 1871, it was, among other things, provided that:

"Consuls general, consuls, vice-consuls, or consular agents, of the two countries, may in the exercise of their duties, apply to the authorities within their district, whether federal or local, judicial or executive, * * * for the purpose of protecting the rights of their countrymen."

The present suit, therefore, if sustained by the facts, is entirely justified. And as bearing upon this, it may be noted in passing that this court some two years ago entertained a somewhat similar bill under this treaty provision.

That the parties who are in control of the defendant association are making deceptive use of the Emperor Franz Josef's name and portrait, for the purpose of inducing people of Austria-Hungarian nationality to deal with them, is clearly shown by the affidavits, and is not denied. Not only is national sentiment thus appealed to in exploiting the business, which, within proper limits, may not be reprehensible, but direct representation is made that the association is under the particular patronage of the emperor, which is known to be untrue, but to which, according to what is testified, the use of his name and portrait gives credence among these people; neither being admissible by the laws of the country from which they come, except by express imperial consent. This of itself is suggestive of dishonest purposes, but might not, standing alone, be sufficient to lay hold of, if a legitimate and responsible business was being conducted. But this is not the fact. As a beneficial association, to say no more, the defendants have no right to go into life insurance, which is altogether different. Commonwealth v. National Mutual Aid Association, 94 Pa. 481; Commonwealth v. Equitable Beneficial Association, 137 Pa. 412, 18 Atl. 1112. And while the insurance department of the state may be relied upon to remedy this, when once its attention has been called to it, in the meantime ignorant immigrants are liable to be deceived into investing their money upon expectations, which have little chance, if indeed they ever were intended to be realized. Ignorant of the laws and customs of the land, and coming from a country where they are materially different, they need the assistance of some one upon whom they can rely to take measures such as this to protect them against imposition, and it is for this, among other things, that the treaty evidently provides. If arrested or imprisoned, there can be no question as to the right, as well as the duty, of the consul to intervene in their behalf; and it is but little less important that he should do so where their scanty and hard-got earnings are at stake.

It is true that the association has not failed as yet to fulfill its undertakings, nor, so far as appears, has any complaint with regard to it been made; and in confining the relief sought to restraining the use of the emperor's portrait and name, which only goes to a part of the mischief done, there may be a suspicion that the consul, after all, is more zealous in behalf of his imperial master than those whose cause he professes to espouse. But, starting out, as the association does, and making use of deceptive agencies, as those in charge of its affairs have shown themselves ready and willing to do, the fraud is so mani-

fest that it is not necessary to wait until actual injury has been done, which would only afford very imperfect relief. And while the use of the emperor's name is only one of the means employed, and if innocently used there would be no particular ground for complaint, yet it is by far the most important one; and perverted, as it is, and lending itself, as it unfortunately does, in the control of unscrupulous parties, to the serious deception practiced in this case, the only safety is in compelling it to be completely dropped. And if there is occasion for requiring this upon the facts shown, the sentimental motive, if any, of the plaintiff, is of no particular concern. This does not prevent the defendants, as it will be noted, from continuing their business, whatever it may be, provided they do so under another name, which is easily obtained. Nor does it matter that the name which they have was given them by charter. The courts do not hesitate to restrain the use of corporate names, where they are the means of working injury. American Clay Mfg. Co. v. American Clay Mfg. Co., 198 Pa. 189, 47 Atl. 936; Singer Mfg. Co. v. June Mfg. Co., 163 U. S. 169, 16 Sup. Ct. 1002, 41 L. Ed. 118; Charles S. Higgins Co. v. Higgins Soap Co., 144 N. Y. 462, 39 N. E. 490, 27 L. R. A. 42, 43 Am. St. Rep. 769; Van Houten v. Hooten Cocoa Co. (C. C.) 130 Fed. 600. The way out of it is to amend the name.

And now July 12, 1907, after due hearing, it is ordered and decreed that a preliminary injunction issue, restraining, preventing, and prohibiting the said Franz Josef Beneficial Association, William R. Evans, Julius Bacher, Victor Steinberg, and Samuel Steiner, their agents, representatives, and employés, from employing, using, printing, or having printed or impressed, upon any letter heads, cards, certificates or other literature or printed matter, either the name, profile, or portrait of Franz Josef, emperor of Austria, and king of Hungary, and restraining, prohibiting, and enjoining the said Franz Josef Beneficial Association and the other said defendants, their agents, representatives, and employés, from doing any and all things calculated or tending to induce the public to believe that the business conducted by the defendants or the said beneficial association, whose officers and agents they are, has any official or other relation with Franz Josef, emperor of Austria, and king of Hungary, aforesaid.