# Glendon Iron Co. *versus* Uhler and Fulmer.

75  467
128  20

75     467
25 SC ³373

1. A corporation adopted the trade-mark, "Glendon" on their iron; the place where their furnaces were was afterwards made a borough by the name of Glendon. Another company afterwards used the mark "Glendon," on their iron. *Held*, that the second company could lawfully use this mark.

2. As a general rule the name of a town, &c., cannot be exclusively appropriated as the trade-mark of any one.

3. A lawful act is not actionable although it proceed from malicious motives.

March 16th 1874. Before Agnew, C. J., Sharswood, Mercur and Gordon, JJ. Williams, J., at Nisi Prius.

[Glendon Iron Co. *v.* Uhler.]

Appeal from the Court of Common Pleas of *Northampton county:* In Equity : No. 18, to January Term 1874.

This was a bill filed February 26th 1872, by the Glendon Iron Company against Peter Uhler and Henry Fulmer, partners, under the name of the Easton Manufacturing Company.

The object of the bill was to restrain the defendants from using a trade-mark on their pig iron, which the plaintiffs claimed belonged to them.

The bill set out that in 1844 a limited partnership was formed under the name of Charles Jackson, Jr., for making iron, and built a furnace in the township of Williams, in Northampton county, a short distance from Easton, called " The Glendon Iron Works," and in that year the partnership invented and used the trade-mark, " Glendon," for stamping their pigs of iron.   In 1857 the partnership were incorporated as " The Northampton Iron Company," for making, transporting and selling iron, &c. ; they continued the business of the partnership and adopted and used the trade-mark " Glendon."    In 1864 the name of the corporation was changed to " Glendon Iron Company," and under that name had continued the business of making iron in Northampton county; they had built five blast furnaces at the same place and carried on an extensive trade, selling their pig iron at Philadelphia, New York, Boston, &c.   The trade-mark " Glendon" had been used by them at South Easton and at the main works a mile above, for many years before that section of country was incorporated into the borough of Glendon ; and the trade-mark had been known to the commercial community as designating plaintiffs' iron, which was superior to and differing from any other iron made in the valley of the Lehigh.

The defendants, under the firm name of " The Easton Manufacturing Company," had erected a furnace about a half mile above the plaintiffs', and within six months had commenced manufacturing pig iron there ; and to induce the belief that their iron was the manufacture of the plaintiffs, had stamped their pigs with the word " Glendon ;" their pigs in size, the stamp, &c., so closely resembled plaintiffs', that purchasers were deceived into the belief that the defendants' iron was the plaintiffs'.   On the defendants' iron the letters " U. F." were prefixed to " Glendon."   Defendants had a large quantity of iron " stamped as aforesaid, with intent thereby to counterfeit the manufacture of the ' Glendon Iron Company,' and to injure and affect the sale of the same."   They avowed that they gave notice to the defendants to cease using their trade-mark, &c.

The defendants denied that " Glendon " had been used by the limited partnership as a trade-mark, but had been put on the iron as descriptive of the place where it was manufactured ; they averred that plaintiffs' iron was stamped " Glendon I. C.," mean-

[Glendon Iron Co. v. Uhler.]

ing Glendon Iron Company; that their furnace was erected as stated in the bill, but was within the borough of Glendon, which was incorporated in 1867; that defendants' iron was not marked at all until December 15th 1871, when it was marked "U. F., Glendon," "U. F." to indicate the names of the partners, and "Glendon" the name of the town where the iron was manufactured. They denied that purchasers would be misled into the belief that the defendants' iron was the plaintiffs' manufacture, or that they intended to counterfeit plaintiffs' manufacture, or to injure its sale; that since the notice from the plaintiffs, although believing they had the right to use the stamp, to avoid litigation, they had manufactured their iron without any stamp whatever. They averred that they had the right to mark their iron with their initials and the name of the place of its manufacture for its identification.

The plaintiffs filed a replication, and B. F. Fackenthall, Esq., was appointed examiner and master.

He took much testimony as to the questions of fact raised by the pleading. As master he found the principal facts as set out in the bill and answer, except that he reported, that in looking at the whole evidence he could "not resist the conclusion that the defendants designedly adopted their mark for the purpose of imitating that of the plaintiffs, and thereby to derive an advantage." He also reported, that "there is no doubt of the propriety of granting the injunction against the use of the word 'Glendon' as prayed for."

He reported the form of a decree in accordance with his finding.

Exceptions were filed to the report. The court below (Longaker, P. J.) set it aside and dismissed the bill.

The plaintiffs appealed to the Supreme Court, and assigned for error the decree dismissing the bill.

*R. I. Jones* and *M. H. Jones*, for appellants, cited: As to right to use a trade-mark: Stokes *v.* Longraff, Cox's Trade-mark Cases 137; Wolfe *v.* Goulard, 18 Howard Pr. Cases 64; Newman *v.* Alvord, 49 Barb. 588; Burnett *v.* Phalon, Cox's Trade-mark Cases 376. As to the mark being an imitation: Coffeon *v.* Brunton, 4 McLean 516; Amoskeag Co. *v.* Spear, Cox's Trade-mark Cases 93; Davis *v.* Kendall, 2 R. I. 566; Walton *v.* Crowley, Cox's Trade-mark Cases 166; Fetridge *v.* Wells, Id. 180; Clark *v.* Clark, Id. 206; Williams *v.* Johnson, Id. 214; Colliday *v.* Baird, Id. 257. It is not a question of motive, but whether the right has been invaded: Millington *v.* Fox, 3 Mylne & Craig 338. It is no answer that the simulated article is equal to the genuine: Coats *v.* Holbrook, Cox's Trade-mark Cases 20; Taylor *v.* Carpenter, Id. 82; Gillott *v.* Esterbrook, Id. 340.

[Glendon Iron Co. *v.* Uhler.]

*E. J. Fox*, for appellees.—The ground for restraining the use of a trade-mark is that to permit it would be a fraud on the rights of the party complaining: 2 Story's Eq. Jur., sect. 951 c; Merrimack Co. *v.* Gardner, 4 E. D. Smith 387; Palmer *v.* Harris, 10 P. F. Smith 159. The name of a place where the business is, cannot be appropriated by any one person: Wolfe *v.* Goulard, 18 Howard's Pr. 64; Brooklyn White Lead Co. *v.* Masury, 25 Barb. 416; Delaware & Hudson Canal Co. *v.* Clark, 5 Am. Law Times R. 135. A party can have relief only where by the use of a trade-mark the goods of one vendor are sold as those of another: Amoskeag Co. *v.* Spear, 2 Sandf. 599; Meriden Co. *v.* Boardman, 35 Conn. 402; Fairing *v.* Silverlock, 39 Eng. Law & Eq. Rep. 514.

The opinion of the court was delivered, May 11th 1874, by

MERCUR, J.—Glendon is the name of the town in which the business of each party is located and carried on. It is an incorporated borough. Being then the name of an incorporated town, the main question is whether the appellant lawfully has the exclusive right to use it as a trade-mark. It is conceded, as a general rule, that the name of a town or city cannot be so appropriated as the exclusive property of any one. This view is well sustained by authority: High on Injunctions 673; Bispham's Eq. 411; Wolfe *v.* Goulard, 18 Howard's Prac. Rep. 64; Brooklyn White Lead Co. *v.* Masury, 25 Barb. 416; Newman *v.* Alvord, 49 Id. 588; Candee *v.* Deere, Supreme Court of Illinois, 10 Am. Law Reg. N. S. 694; Del. & Hud. Canal Co. *v.* Clark, 13 Wallace 311.

It is contended by the appellant that this case is taken out of the general rule, inasmuch as the trade-mark was adopted prior to the incorporation of the borough, and before there was any town in that place. No authority is cited which supports this distinction. The case of Wotherspoon *v.* Currie, Lords' Journals 18th April 1872, is clearly distinguishable. It is known as the Glenfield Starch Case. It is true the injunction was there granted; but the complainant and respondent were not both engaged in carrying on the same business in the same town or city. There was no town, no city there. The Lord Chancellor says: "Glenfield is not a town, * * * it is not a parish, it is not a hamlet, it is not a district of any special character, but it was an estate of that name upon which some people seem to have erected some houses or manufactories, and upon which now some sixty people are living." It will not do to apply to an incorporated borough in this state the same rule that may be applicable to an estate in England. Such a borough is essentially of a public nature, the estate is of a more private character. The name which an individual may give to his estate is unlike that which legislative sanction has given to a municipal corporation. The rights of the public in each are radically different.

[Glendon Iron Co. *v.* Uhler.]

The appellees did not falsely represent the place of their business location. Their pig iron was actually manufactured within the borough of Glendon. It was said in Canal Co. *v.* Clark, *supra :* "True, it may be that the use by a second producer in describing truthfully his products by a name or combination of words already in use by another, may have the effect of causing the public to mistake as to the origin or ownership of the product, but if it is just as true in its application to his goods as it is to those of another who first applied it, and who therefore claims an exclusive right to use it, there is no legal or moral wrong done. Purchasers may be mistaken, but they are not deceived by false representations, and equity will not enjoin against telling the truth." The appellees put upon their pigs the initials of their firm and the name of their town. That name was Glendon to the whole world. It cannot be that the previous appropriation by the appellants of the word which now is the name of the town prevents any other manufacturer of pig iron, within its limits, from using the same word. If it be so now, it may continue through all coming time. The boundaries of the town may be enlarged. The borough may grow into a city. The manufactories of pig iron may be multiplied, yet the word most expressive to indicate their location must be denied to all, save one. So far as the authorities go to restrain a manufacturer from the adoption of a truthful trade-mark, we will endeavor to enforce them. When asked to go further we must decline. If the effect of the incorporation of the appellants' district of country into a town by the name of "Glendon" has been to deprive them of some of their former rights, they must submit to the consequences. As well might they complain of the increased taxation which the municipal corporation has probably imposed upon their property. By the creation of this new municipality they assumed new relative rights. They relinquished some which they previously possessed. The rights thereby given to the public became common to all citizens dwelling therein. We see nothing in the facts of this case, even as found by the master, to take it out of the general rule which denies to one the exclusive use, as a trade-mark, of the name of the town in which the same kind of goods are manufactured by others. The commission of a lawful act does not become actionable although it may proceed from a malicious motive : Jenkins *v.* Fowler, 12 Harris 308 ; Idem, 4 Casey 176. This view is decisive of the case. We will, however, add that an examination of the evidence has, in one respect, led us to a different conclusion than the one arrived at by the master. We are unable to discover satisfactory proof that the appellees adopted their trade-mark with the design of imitating the one used by the appellants. The learned judge was entirely correct in dismissing the bill.

Decree affirmed, and appeal dismissed at the costs of the appellant.