## Kendrick, trading as Quaker City Laundry, v. Quaker City Coat and Apron Supply and Laundry Company.

*Trade-marks — Trade names — Geographical names—Fraud—Misleading public—Character of business.*

1. While geographical terms and words in common use to designate a locality or section of a country cannot be monopolized as trade-marks, yet their use will be enjoined where the evident purpose is to injure the business of another, or where the use of such words tends to mislead and confuse the public.

2. The plaintiff in a trade-mark case will be held to have no exclusive use of the words "Quaker City Laundry" as against the defendant's use of the words "Quaker City Coat and Apron Supply and Laundry Company."

3. In such case, the plaintiff will not be granted an injunction, where he fails to show that the defendant had used unfair trade methods or intentionally interfered with plaintiff's business, or that the business conducted by defendant had misled or confused the public to plaintiff's disadvantage, and this is especially so where it appears that the whole of defendant's business was "bulk laundry business," while only one-fifth of plaintiff's business was of that character.

Bill in equity for an injunction. C. P. No. 5, Phila. Co., June T., 1925, No. 4010.

*Middleton, Blakely & Richardson,* for plaintiff.

*J. J. McDevitt, Jr.,* for defendant.

MARTIN, P. J., July 13, 1926.—*Findings of fact.*

1. Since 1918 the plaintiff has been conducting a laundry business at 48th and Ludlow Streets, in the City of Philadelphia, under the name of "Quaker City Laundry," which name was registered in the office of the Secretary of the Commonwealth at Harrisburg under the Fictitious Names Act.

2. Between the years 1907 and 1918 the plaintiff was associated with others in the laundry business at the same place, and prior to 1907 a laundry business was conducted at that place for a number of years by the predecessors in business of the plaintiff.

3. Plaintiff is engaged in a general laundry business, but about four-fifths of the business is known as "family laundry" and the remaining one-fifth is "bulk laundry," which is laundry work for hotels, boarding-houses, clubs, restaurants and like places.

4. The plaintiff has invested approximately $100,000 in the business, and expends large sums in advertising. He uses the telephone in connection with his business, and has advertised in the telephone directory, where he is classified under laundries.

5. Defendant since 1914 has been engaged in the laundry and supply business at No. 2024 Germantown Avenue, in the City of Philadelphia, under the name of "Quaker City Coat and Apron Supply and Laundry Company," said name having been registered in the office of the Secretary of the Commonwealth under the Fictitious Names Act.

6. Defendant has invested approximately $100,000 in his business. He does no family wash, but his business is restricted to "bulk laundry," which is laundry work for hotels, boarding-houses, clubs, restaurants and like places.

7. Defendant uses the telephone in connection with his business, which is advertised in the telephone directory and classified under laundries.

8. There was no confusion of the business of the parties, owing to the names used by them in the conduct of their respective businesses, prior to the year 1925; but during that year plaintiff received telephone calls which were not intended for him or his business. Letters were received by plaintiff

which were not intended for him. There was testimony as to "probably twenty-five or fifty telephone calls" and "probably eight or ten letters or postal cards," but the time over which this alleged confusion extended was not definitely fixed.

9. The business of plaintiff and defendant, under the evidence, can conflict only as to "bulk laundry" done for hotels, boarding-houses, clubs, restaurants and like places. There is no evidence of any actual competition between them or that they cater to people living in the same vicinity, although they are competitors in the general sense of being engaged in the bulk laundry business in the City of Philadelphia.

10. Of the plaintiff's requests for findings of fact, the 2nd, 3rd, 5th, 7th and 8th are affirmed; the 1st, 9th and 10th are refused; the 4th is affirmed with the qualification that defendant's laundry business is restricted to bulk laundry, doing work for hotels, clubs, boarding-houses, restaurants and like places. The 6th is affirmed with the qualification that the plaintiff and defendant are in competition only with respect to bulk laundry, and there is no evidence indicating they serve people living in the same locality.

11. Of the defendant's requests for findings of fact, the 2nd, 3rd, 4th, 5th, 6th, 7th, 8th, 11th, 14th and 15th are affirmed; the 9th, 10th, 12th and 13th are refused. The 1st is affirmed with a qualification that the evidence does not definitely indicate during what period of time the plaintiff and his predecessors used the name "Quaker City Laundry." There is evidence that at some time or other the word "Limited" was used in connection with the business name.

## Discussion.

The plaintiff is seeking to enjoin the use of the words "Quaker City" and "Laundry" in the business name of the defendant. Defendant contends that the law gives no proprietary right in geographical or family names, or words descriptive or in common use. Plaintiff claims that the law will restrain the use of names or words when they are intended to injure the business of another, or are so similar as to mislead and confuse the public.

"It is a fundamental rule that terms merely descriptive of the things or events to which they are applied cannot be exclusively appropriated as trade-marks and trade names. An exclusive trade-mark must consist of some arbitrary or fanciful term, or device, not descriptive of the article to which it is applied:" 38 Cyc., 708. "Geographical terms and words in common use to designate a locality, a country, or a section of a country, cannot be monopolized as trade-marks:" 38 Cyc., 722.

These general rules have been applied in Scandinavia Belting Co. v. Asbestos and Rubber Works, 257 Fed. Repr. 937; Loughran v. Quaker City Chocolate and Confectionery Co., Inc., 286 Fed. Repr. 694; Glendon Iron Co. v. Uhler, 75 Pa. 467; Laughman's Appeal, 128 Pa. 1; Spruks v. Connell, 7 Lacka. Leg. News, 198; Canal Co. v. Clark, 13 Wallace, 311; Columbia Mill Co. v. Alcorn, 150 U. S. 460; Elgin Watch Co. v. Illinois Watch Case Co., 179 U. S. 665; but the courts of Pennsylvania have held that geographical names and descriptive words may be enjoined where the evident purpose is to injure the business of another, or where the use of such words tends to mislead and confuse the public: American Clay Manuf. Co. v. American Clay Manuf. Co., 198 Pa. 189, and other cases. But in these cases there was something unlawful in the use of the name, or an element of fraud, such as the intentional interference with another's business, or confusing the public mind, which warranted interference by a court of equity.

Kendrick, trading as Quaker City Laundry, v. Quaker City Coat, &c., Co.

In American Clay Manuf. Co. v. American Clay Manuf. Co., 198 Pa. 189, there was such a similarity of names as to mislead and confuse the public. The defendant was a foreign corporation coming into Pennsylvania and using the same name as that under which a Pennsylvania company had been incorporated. The laws and practice in Pennsylvania would not have permitted the incorporation of defendant in this State with the same name as that of the plaintiff, and it was decided that a foreign corporation should have no higher rights than those which were accorded to a Pennsylvania association. In Hires Co. v. Hires, 182 Pa. 346, the defendant used labels and packages similar in appearance to those of complainant, which tended to confuse the public and mislead purchasers. In Portuondo Cigar Manuf. Co. v. Portuondo Cigar Manuf. Co., 222 Pa. 116, the defendant was using the name of the man who founded the business, but who was dead. Where there is evidence of the using of trade-marks, labels and indices that bear such earmarks to those of another dealer as to lead to the conclusion that they were designed from those of the other dealer, equity will grant relief where there is an evident intent to mislead the public into the belief that it was buying the goods of a rival concern.

In Suburban Press v. Suburban Publishing Co., 227 Pa. 148, an injunction was granted where, in addition to the similarity of names, "The magazine known as 'Philadelphia Suburban Life' bore a striking resemblance to the other in size, style, character of paper and illustration, printed matter and in general scheme of title page, and circulated in practically the same territory."

In Pennsylvania Central Brewing Co. v. Anthracite Beer Co., 258 Pa. 45, for forty years the plaintiff marked its containers by a red band and a blue band and ring on each end painted in colors like the bands. The defendant was enjoined from painting its containers like those of the plaintiff and using unfair business methods likely to mislead the public and injure the plaintiff.

It is admitted that the defendant in the instant case has an equal right with plaintiff to use the words "Quaker City" and "Laundry" in his business title, but the question is whether he has used this adopted name with the intention of injuring the business of plaintiff or whether his use of it is likely to mislead a person of average intelligence and thus confuse the public.

There is no evidence of an intentional injury to the business of plaintiff; and the business names adopted by plaintiff and defendant do not warrant the conclusion that a person of ordinary intelligence would be misled by the similarity in the names. No evidence was presented that would warrant a conclusion that the public has been misled or confused to such an extent as to warrant the interference of a court of equity. These parties have been engaged in business under their respective names for a number of years, but no interference or confusion is recorded prior to 1925. Some time during that year plaintiff received telephone calls not intended for him or his business, but it was not proved that the calls were intended for defendant, and there was no evidence produced of calls to the defendant intended for plaintiff, and that, in consequence, plaintiff's business suffered. There is testimony that some letters were received by the plaintiff not intended for him, and if it be inferred that these letters were intended for the defendant, there is no evidence that any correspondence intended for the plaintiff went to the defendant, or that the business of the plaintiff suffered from that cause. There was testimony as to twenty-five or fifty telephone calls and eight or ten letters or postal cards, but the testimony did not disclose during what period of time these errors occurred. Such indefinite testimony fails to demonstrate that there was confusion produced in the public mind to an extent that warrants enjoining the defendant. The evidence establishes that the only competition between these

parties is in "bulk laundry" business, and that only one-fifth of the business of the plaintiff is laundry of that character.

Plaintiff failed to prove that the defendant has not lawfully adopted the name under which he is doing business; that he has adopted unfair trade methods; that the use of his business name is intended to injure the business of plaintiff, or that the name defendant is using is so similar to that of the plaintiff as to mislead or confuse a person of ordinary intelligence.

*Conclusions of law.*

1. Plaintiff is not entitled to the exclusive use of the words "Quaker City Laundry" as a business name.

2. Defendant has a right to use the name "Quaker City Coat and Apron Supply and Laundry Company" as his trade name.

3. Defendant has not used unfair trade methods, and has shown no intention to unlawfully interfere with the business or trade of plaintiff.

4. The use by the defendant of the name "Quaker City Coat and Apron Supply and Laundry Company" is not likely to mislead or confuse a person of ordinary intelligence.

5. The use by defendant of the name "Quaker City Coat and Apron Supply and Laundry Company" has not misled or confused the public in such a way as to warrant the interference of a court of equity.

6. The bill of complaint must be dismissed, and a decree *nisi* entered accordingly.

7. The costs must be paid by the plaintiff.

*Decree nisi.*

And now, July 13, 1926, it is ordered, adjudged and decreed that

1. The plaintiff has shown no case calling for equitable relief, and his prayer for an injunction is refused.

2. The bill of the plaintiff is dismissed.

3. The costs of this proceeding should be paid by the plaintiff.

The prothonotary is directed to give notice to the parties or their counsel of record of the the entry of this decree.