# American Clay Manufacturing Company, a Corporation of Pennsylvania, *v.* American Clay Manufacturing Company, a Corporation of New Jersey.

198      189
35 SC ¹ 81
35 SC    83

198    189
227   §152
e39SC¹368

*Corporations—Protection of name—Trade-mark—Equity.*

There are two classes of cases involving judicial interference with the use of names, first, where the intent is to get an unfair and fraudulent share of another's business, and second, where the effect of defendant's action, irrespective of his intent, is to produce confusion in the public mind and consequent loss to the complainant. In both cases courts of equity administer relief without regard to the existence of a technical trade-mark.

A New Jersey corporation whose name is identical with that of an older Pennsylvania corporation, will be enjoined from the use of such name in Pennsylvania, although it chose its name and was incorporated under such name without any fraudulent intention or any object of competing with plaintiff, or inducing the public to purchase its wares under the impression that they were those of the plaintiff; and this is the case although the New Jersey corporation has complied with the act of April 22, 1874, in regard to filing statement, and has received the certificate of the secretary of the commonwealth of its legal right to do business in the state.

As a domestic corporation cannot be incorporated in Pennsylvania with the same name as an older Pennsylvania corporation, a foreign corporation will not be privileged over domestic ones, and if it has taken the name of an older Pennsylvania corporation, it will be enjoined by a court of equity from the use of such name in Pennsylvania.

*Corporations—Protection of name—Presumption of injury.*

The exclusive right of a corporation to its name, is one that of itself carries the presumption of injury by interference, and will, therefore, be protected.

A court of equity will enjoin a foreign corporation from using a corporate name identically the same as that of an older Pennsylvania corporation, where the evidence shows that correspondence was impeded in the post-office, and that great confusion arose in the matter of telephone address and in the making of drafts and checks.

Argued Oct. 25, 1900. Appeal, No. 142, Oct. T., 1900, by plaintiff, from decree of C. P. No. 2, Allegheny Co., July T., 1900, No. 473, dismissing bill in equity, in case of American Clay Manufacturing Company, a corporation of Pennsylvania, v. American Clay Manufacturing Company, a corporation of New Jersey. Before McCollum, C. J., Mitchell, Fell, Brown and Mestrezat, JJ. Reversed.

Bill in equity for an injunction to restrain the use of corporate name.

The facts were substantially as follows:

The bill was by a Pennsylvania corporation, doing business in the city of Pittsburg, against a New Jersey corporation of the same name, which began to do business in the city of Pittsburg and maintain an office there after the incorporation of the plaintiff, to enjoin the defendant from infringement upon the right of the plaintiff to the sole and exclusive use of its name and from doing business in the state of Pennsylvania in that name. The plaintiff was engaged in the manufacture and sale of building bricks and had in contemplation the test and purchase of clays suitable to the manufacture of sewer pipe, terra-cotta, fireproofing, etc. The defendant was engaged in the manufacture and sale of fire brick and sewer pipe. The New Jersey corporation was registered under the same name as the Pennsylvania corporation in the office of the secretary of the commonwealth and thereby obtained a license to transact business under that name in Pennsylvania. It established its main office in the city of Pittsburg and carried on an extensive business. Both companies in advertisements, letter-heads, envelopes and all other similar matters used the same name, but after the attention of the New Jersey company had been called to the matter, it added the words " Of New Jersey " in red ink under its

name. The result of the similarity of names was great confusion between the parties in the matter of telephone address and delivery of mail, and in the making of checks and drafts by their correspondents. It was not alleged that the defendant company chose its name and was incorporated with a fraudulent intention, or with the object of competing with the plaintiff, or for the purpose of inducing the public to purchase its wares under the impression that they were those of the plaintiff.

The court, SHAFER, J., after finding the facts, delivered the following opinion:

The object of the name of an individual, partnership or corporation is the distinction of its holder from all others. It frequently happens, however, that persons or companies have the same name, or names so similar as to be, in effect, the same; and this must necessarily give rise to confusion and annoyance to the parties themselves, and often to persons dealing with them, and sometimes to an unfair and fraudulent advantage to one party and loss to the other, by reason of such confusion in the minds of third persons. In the case of individuals whose names are acquired by usage from their parents and used from infancy, long before their holders entered upon any business, there can usually be no complaint of such an accidental similarity of names, although it may give rise to annoyance and loss. In the case of associations voluntarily formed and named, whether chartered or not, there is an opportunity to avoid such difficulty by refraining from choosing a name identical with or similar to that of associations already in existence. In the case of partnerships this is usually, perhaps always, done by those forming new associations, unless they have carelessly omitted to ascertain the existence of the prior named association, or have adopted its name with a fraudulent purpose. The same may be said of the formation of corporations, with the additional circumstance that the law requires those who desire to be incorporated to give public notice, which includes the name by which they desire to be chartered; and the authorities empowered to grant charters will not allow the use of a name theretofore appropriated. It seems, however, that the law of Pennsylvania does not provide for notice of the proposed registration of a foreign corporation, or enable the registering officer to refuse such registration where

the name of the corporation has already been used in creating a domestic corporation. This would seem to be an omission calling for a legislative remedy. There is no doubt, and it is not necessary to cite cases to the effect that, where a name is used, even that of an individual, for a fraudulent purpose, its use will be enjoined, and this notwithstanding the issuance of a charter by the public authorities allowing the use of the name. We know of no case, however, in which it has been held that the use of a name which merely produces confusion in correspondence and inconvenience to the parties and those dealing with them has been made a ground of equitable interference. In every case which has been cited and in which an injunction has been granted, there has been an allegation of fraudulent advantage taken or intended to be taken by the new association over the old. While the circumstances of this case are unfortunate and sure to give rise to trouble to both parties, and we think that the defendant company exercised but little care in its choice of a name, yet, under the circumstances, we do not see that the plaintiff is entitled to a remedy in equity.

The bill must, therefore, be dismissed with costs.

*Error assigned* was the decree of the court.

*Willis F. McCook*, for appellant.—Most of the decided cases relate to the use of the firm, or associate name to mark the origin or quality of goods; the name thus becoming a trade-mark, the trade-mark is sought to be protected against its fraudulent use by another in unfair competition. But there are decided cases where the question is one of corporate or associate name only, and in which it is held immaterial whether the name was taken innocently or not, and where it is held immaterial whether the infringer intended or does secure an advantage to himself, if he injures or may injure the first user of the name: North Cheshire & Manchester Brewing Co. v. Manchester Brewing Co. L. R. App. Cases (1899), 83.

Nor do the courts limit injunction to the cases of the use of the business or corporate name, as applied to goods as a trademark, nor do they limit injunction to cases where the parties are competitors in the same business: Amoskeag Mfg. Co. v. Garner, 54 Howard's Prac. Rep. 297.

The corporate name should receive as much protection against its unauthorized use as the name of a natural person, and a corporate name is entitled to be protected to the same extent as a trade-mark: Ainsworth v. Walmsley, 35 L. J. Ch. 352; Higgins Co. v. Higgins Soap Co., 144 N. Y. 462; Lee v. Haley, L. R. 5 Ch. App. Cases, 155.

*Stephen Stone*, with him *W. A. Stone*, for appellee.—The decree of the court below was without error: Tygert Allen Fertilizer Co. v. Tygert, 191 Pa. 337; Lafean v. Weeks & Co., 177 Pa. 429; Putnam Nail Co. v. Dulaney, 140 Pa. 245; Heinz v. Lutz, 146 Pa. 592; Koehler v. Sanders, 122 N. Y. 65; Goodyear Indian Rubber Mfg. Co. v. Goodyear Rubber Co., 128 U. S. 598; Celluloid Mfg. Co. v. Cellonite Mfg. Co., 32 Fed. Repr. 94; New York & Rosendale Cement Co. v. Coplay Cement Co., 44 Fed. Repr. 277; Del. & Hud. Canal Co. v. Clark, 13 Wall. 311; Evans v. Von Laer, 32 Fed. Repr. 153; Turton v. Turton, L. R. 42 Ch. Div. 128; Stokes v. Landgraff, 17 Barb. 608; Hoyt v. Hoyt, 143 Pa. 623.

OPINION BY MR. JUSTICE MITCHELL, January 7, 1901:

The material facts which are not disputed are that plaintiff company has been impeded and interfered with in its business by the confusion arising from defendant's assumption of the same name. The learned judge below found that the circumstances were " unfortunate and sure to give rise to trouble to both parties, and the defendant company exercised but little care in its choice of a name," but he felt himself compelled to dismiss the bill because the defendant had assumed its name without fraud and with no intent " to induce the public to purchase its wares under the impression that they were those of the plaintiff."

The first question for consideration therefore is whether a fraudulent intent is the essential basis of relief. In ordinary cases of trade-mark and in cases involving an individual's use of his own name, it is no doubt the controlling factor, but it is not always essential. There are two classes of cases involving judicial interference with the use of names, first, where the intent is to get an unfair and fraudulent share of another's business, and second, where the effect of defendant's action, irrespective

of his intent, is to produce confusion in the public mind and consequent loss to the complainant. In both cases the courts of equity administer relief without regard to the existence of a technical trade-mark: North Cheshire, etc., Brewery Co. v. Manchester Brewery Co., Law Reps. App. Cases (1899), 83; Holmes et al. v. Holmes et al. Mfg. Co., 37 Conn. 278; Newby v. Oregon Cent. R. R. Co., 1 Deady, 609; Higgins Co. v. Higgins Soap Co., 144 N. Y. 462.

In the very recent case of North Cheshire & Manchester Brewing Co. v. Manchester Brewing Co., supra, the house of lords affirmed the decision of the court of appeal, enjoining the defendant from taking even as a second or subordinate part of its corporate title, the name of an older corporation. The facts as stated in the syllabus were that the Manchester Brewing Company, Limited, had carried on business under that name for years. The appellants bought an old business called the North Cheshire Brewing Company, Limited, and then (without intending to deceive) got themselves incorporated and registered under the name North Cheshire and Manchester Brewing Company, Limited. It was held that as a matter of fact the name of the appellant company was calculated to deceive, and that the appellant must, therefore, be restrained by injunction in the usual way. HALSBURY, Lord Chancellor, said, " The real question is in a single sentence. Is this name so nearly resembling the name of another firm as to be likely to deceive?" And again, " It is not necessary to consider what the statute has done in respect of registration, or the known state of the law as it existed before the statute was passed, because here it seems to me to be the same question: This being a limited company, in order to have a title you must register your title, and if you register your title in such a way as is calculated to deceive, that is the same question that the court would have had to decide before the act of parliament had passed at all. . . . In the result it is perfectly immaterial to my mind for the purpose of the decision of this case whether they were fraudulent or not. The question is whether this is an injury to the plaintiff's right. If it is an injury to the plaintiff's right it is perfectly immaterial whether they intended it or not. The court must restrain them from that which is injuring another person, however inadvertently they may have done it."

Holmes, Booth & Haydens v. Holmes, Booth & Atwood Mfg. Co. 37 Conn. 278, supra, was a much stronger case than the present, for it enjoined individuals from such use of their own names as would interfere with the plaintiff. A company had been formed including in its corporate title the names of Holmes and Booth, two of its stockholders and directors. Some years later, Holmes, Booth and other stockholders formed a new corporation which assumed the name of Holmes, Booth & Atwood Mfg. Co. On a bill by the first corporation the supreme court of errors of Connecticut enjoined the use of Holmes and Booth's names in the title, saying, " The law having authorized the selection of a name and having declared the name so selected to be the name of the corporation, we see no reason why the law should not protect the corporation in the use of that name, on the same principle and to the same extent that individuals are protected in the use of trade-marks. Hence it necessarily follows that corporations in the exercise of discretionary powers conferred by the statute, must so exercise them as not to infringe upon the established legal rights of others. . . .The existence of the consequences does not necessarily depend upon the question whether fraud or an evil intent does or does not exist. The quo animo therefore would seem to be an immaterial inquiry."

The undisputed facts in the present case establish that the action of the defendant produces an injury to the plaintiff for which there is no adequate redress at law. The case is therefore within the general jurisdiction of equity, and the decisions cited as well as many others in the same line, show that the courts have administered equitable relief. Two questions only need to be discussed further, first, is the defendant so clearly within its legal right that equity will not interfere, and secondly, if not, is the injury to plaintiff so vague or so small as to be considered de minimis ?

The defendant insists that as it has complied with the requisites of the statutes in regard to filing statement, etc., and has received the certificate of the secretary of the commonwealth, it has the legal right to do business in the state. This claim, however, cannot be sustained in its entire breadth. So far as the statute is concerned, the right may be admitted. But we still have the question on general principles of equity, which,

as Lord HALSBURY said in the passage quoted supra from Brewing Co. v. Brewing Co., is the same question as it would have been before the statute was passed.   It is conceded that the defendant could not have been chartered as a Pennsylvania corporation by its present name, because that name was already appropriated by the plaintiff.   The law requires notice to be published among other things of the name of an intended corporation, and the authority granting the charter is required to see that the corporation will not be "injurious to the community."   Part of the intent of the act has always been understood to be to prevent confusion of titles and to protect the first taker of the name which has assumed the responsibilities and paid for the privileges of incorporation.   Accordingly it has been the practice both of the executive department and the courts to consider the question of interference with previous corporations having the same or similar names : First Presbyterian Church of Harrisburg, 2 Grant, 240 ; In re Dime Savings Bank, 26 W. N. C. 77 ; In re Citizens' Trust, etc., Co., 27 W. N. C. 437 ; In re Carlin Mfg. Co., 29 W. N. C. 158 ; In re York Wall Paper Co., 35 W. N. C. 574 ; In re Columbus Security Order, 27 W. N. C. 36 ; In re Waverly Red Cross, etc., 30 W. N. C. 257.

As it appears then that the provisions of the statutes would prevent any new Pennsylvania corporation from being now chartered with the defendant's name, there is certainly no presumption that foreign corporations were intended to be privileged over domestic ones, and no good reason why the mere absence of a statutory provision as to foreign corporations coming into this state to do business, should oust the courts of equity from their general jurisdiction over the subject, which is exercised independently of statute.

Secondly, is the injury de minimis?   The learned judge below found that the circumstances were "sure to give rise to trouble," and we have the evidence that correspondence was impeded in the post office and telephone lines, and the confusion and delay resulting in that and other ways.   In these days of telephone, telegraph and fast transportation, when it may be said more significantly than ever before that time is money, such confusion and delay are manifestly a serious business injury.   But even without this, the authorities have settled that

the exclusive right of a corporation to its name is one that of itself carries the presumption of injury by interference and will therefore be protected. / In Fort Pitt Bldg. & Loan Assn. v. Model Plan Bldg. & Loan Assn., 159 Pa. 308, there was a bill to enjoin the defendant from using the name " Fort Pitt " which had been added to its original title by a decree of court. The bill averred irreparable injury by interference, etc., and on demurrer this court awarded a perpetual injunction. It was held that the jurisdiction of the courts to grant the amendment to defendant's charter had been taken away by a later statute, and defendant therefore had not even color of right to the title. Except for that difference the case is on all fours with the present and would be controlling authority without further argument. But on the question of damage to bring the case within equity jurisdiction, STERRETT, C. J., said, " The name being an essential in plaintiff's corporate existence, its further wrongful use by defendant will have the natural tendency to injuriously affect plaintiff's identity and business. For this the law has no adequate remedy, and resort was taken to the equitable remedy by injunction," citing Newby v. Oregon R. R. Co., 1 Deady, 609, where it was said " under the law the corporate name is a necessary element of the corporation's existence. Without it a corporation cannot exist. Any act which produces confusion or uncertainty concerning this name is well calculated to injuriously affect the identity and business of a corporation. And as a matter of fact, in some degree at least, the natural and necessary consequence of the wrongful appropriation of a corporate name is to injure the business and rights of the corporation by destroying or confusing its identity. The motives of the persons attempting the wrongful appropriation are not material."

Decree reversed, bill reinstated and injunction directed to be issued in accordance with this opinion.