Stroehmann Brothers Company, Appellant, *v.*
Manbeck Baking Company.

Argued May 9, 1938.   Before KEPHART, C. J., SCHAF-
FER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Herbert J. Jacobi*, of *Jacobi & Jacobi*, with him *Bowman & Bowman* and *Carl B. Shelley*, for appellant.

*John Dashiell Myers*, with him *William H. Earnest* and *Guy H. Davies*, for appellee.

OPINION BY MR. JUSTICE DREW, June 17, 1938:

This suit in equity was brought to restrain defendant from alleged trade-mark infringement and unfair competition, and to compel an accounting of profits allegedly gained thereby. Upon finding that neither infringement nor unfair competition existed, the court below dismissed the bill. This appeal followed.

We agree that plaintiff has shown nothing to justify the interference of equity. To make a case of unfair competition it must be shown by the person complaining that another by simulation of labels *(Klepser v. Furry,* 289 Pa. 152; *Juan F. Portuondo Cigar Mfg. Co. v. Vicente Portuondo Cigar Mfg. Co.,* 222 Pa. 116), by imitation of packages *(United Drug Co. v. Kovacs,* 279 Pa. 132; see *Hoyt v. Hoyt,* 143 Pa. 623), by deceptive selling practices *(Scranton Stove Works v. Clark,* 255 Pa. 23), by use of complainant's containers *(Phila. Dairy Products v. Quaker City Ice Cream Co.,* 306 Pa. 164), by misleading advertising *(Wirfs v. Bosley Co.,* 20 Fed. [2d] 632), or by other means has attempted to trade on the complainant's business reputation. Trade-mark infringement, when alleged as a ground for injunction, is simply an element of unfair competition: *B. V. D. Co. v. Kaufmann & Baer Co.,* 272 Pa. 240. It may also, of course, in an appropriate proceeding, be made subject of an action for statutory penalties: *Geffen v. Baltimore Markets, Inc.,* 325 Pa. 509. When relief is sought upon an allegation of imitation of labels, whether registered or not, such similarity must be shown as to make it reasonably likely that the average purchaser will be deceived: *B. V. D. Co. v. Kaufmann & Baer Co.,* supra; *Heinz v. Lutz,* 146 Pa. 592. The possibility that pur-

chasers will be misled is not enough: *Lafean v. Weeks & Co.*, 177 Pa. 412; *Brown v. Seidel*, 153 Pa. 60. Like rules apply where the claim is simulation of advertising. A likelihood that the public will be confused in the belief that a competitor's product is in fact that of the complainant must be demonstrated: *Hiram Walker & Sons v. Penn-Maryland Corp.*, 79 Fed. (2d) 836, 839; *Maytag Co. v. Meadows Mfg. Co.*, 35 Fed. (2d) 403, 406; *Premier Malt Products Co. v. Kasser*, 23 Fed. (2d) 98. The foregoing principles are well established. It remains only to apply them to the facts before us.

Beginning in September, 1935, plaintiff has been using in the Harrisburg market a "master design" for bread wrappers. The design features diagonal stripes in solid color, the particular color used upon a wrapper indicating the type of bread or loaf enclosed. Both on and between the stripes the name "Stroehmann's" is printed in contrasting colors in bold script about four inches long and an inch high. Each wrapper also bears in large letters the name of the type of bread enclosed. Upon adopting this design plaintiff registered with the secretary of the commonwealth the following trade-mark, "Stroehmann's and Diagonal [naming each color used] Stripes." The idea of a "master design" of diagonal stripes colored to indicate types of bread was not original with plaintiff but had been used in the Harrisburg market for about five years and in the trade generally for about two years before plaintiff employed it.

Defendant began in May, 1936, to use a "master design" with diagonal stripes in pastel shades broken by fine white lines running longitudinally the length of each stripe. On each of the four sides of a wrapped loaf and superimposed upon the diagonal stripe is an oval figure five inches wide and three inches high. The oval is of a much deeper shade of the same color used in the stripe and upon it is printed in large letters the name "Manbeck's" along with the name of the type of bread enclosed. This oval with defendant's name is the most

conspicuous feature of the wrapper. It covers nearly half of each side of an average loaf. The oval, not the diagonal stripes, is the main identifying characteristic of defendant's wrapper and distinguishes it from plaintiff's so clearly that ". . . it is difficult to see how anyone with but a glimmering of intelligence could be deceived": *Heinz v. Lutz,* supra, at page 610. The only point in which plaintiff's and defendant's wrappers are at all comparable is the "master design" of diagonal stripes, a device that did not originate with plaintiff and was never employed by it exclusively. Consequently, even had the stripes been the predominant feature of defendant's wrapper, plaintiff could not complain of unfair competition: *Lafean v. Week & Co.,* supra. It is suggested, however, that purchasers may be deceived by the appearance of the ends of defendant's loaves when exposed for sale in bread racks with the ends out. The diagonal stripes of both defendant's and plaintiff's wrappers do converge at the end of the loaf when sealed, and, it is true, except for the colors used, look quite alike. No name appears on the end. Nevertheless, it is not likely that a purchaser will buy without seeing more than the end of a loaf of bread. The bread must be taken from the racks on which retailers exhibit it, and anyone would then notice the pronounced differences already described. Furthermore, as just noted, plaintiff has no claim to originality of the feature that makes the ends of its wrapped loaf look like those of defendant's wrapped loaf. Moreover, registry of a trade-mark of itself gives no right to exclusive use; proof of originality of the registered mark as well as deceptive similarity of the mark used by another is essential: *Hub Clothing Co. v. Cohen,* 270 Pa. 487.

Nor do we think that defendant copied from plaintiff's advertising. Plaintiff had conducted an advertising campaign in the newspapers and upon billboards, the theme of which was a "Radiant Health Family" depicting actual photographs of a man, woman, two boys and

a girl, fictitious users of plaintiff's bread. The intent, obviously, was to advertise the quality of plaintiff's bread. When, six months subsequent to plaintiff's discontinuance of the campaign, defendant adopted a "master design" for bread wrappers, it promoted the idea of the design by newspaper and poster advertisements depicting the "Manbeck Family of Breads." This was calculated to bring to public notice the different types of bread made by defendant and for this purpose portrayed drawings of persons to exemplify the names of these types. The "Old Timer" loaf was represented by an old man, the "Golden Sunlight" loaf by a golden haired girl, the "Bonnie" loaf, by a Scottish lass, the "Split Loaf" by twin boys, and the "Fig-N-Honey" loaf by a Bedouin chieftain. Surely no one could have mistaken defendant's advertising for that of plaintiff, even had both been before the public at the same time, contrary to the actual fact that they appeared at least six months apart. The basic ideas of both were wholly dissimilar. Plaintiff's "Radiant Health Family" was supposed to illustrate quality. Defendant's "Manbeck Family of Breads" emphasized variety and was intended to personify each type of bread defendant made. Defendant's name appeared so prominently that no one could possibly have been misled into thinking the bread advertised was that of plaintiff, a conclusive reason for denying relief on this ground: *International Heating Co. v. Oliver Oil Gas Burner & Machine Co.*, 288 Fed. 708; *Wirfs v. Bosley Co.*, supra; *Hiram Walker & Sons v. Penn-Maryland Corp.*, supra. Moreover, it would seem that it could not have been an advantage to defendant to have encouraged such a mistake. Defendant had its own reputation, was older in the Harrisburg market than plaintiff, and could not profit by paying large sums for advertising calculated to make purchasers more conscious of the product of its competitor.

Decree affirmed at appellant's cost.