Dewees et al., Appellants, *v.* Schneider.

Argued January 4, 1939. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*James C. Wobensmith,* with him *Z. T. Wobensmith, 2nd,* for appellants.

*Gordon Butterworth,* for appellee.

OPINION BY MR. JUSTICE DREW, March 22, 1939:

This is an action in equity for an injunction and an accounting. Plaintiffs claim an exclusive trade-mark in the word "Albion" as applied to caulking guns, and charge defendant with infringement of the trade-mark and with unfair competition. The facts are determinative of the case and, expressed chronologically, are as follows:

Defendant, Franz Karl Schneider, is an engineer and has since 1920 operated a general machine repair and jobbing business under the name of Albion Engineering Company. Plaintiffs' assignor, the Calbar Paint and Varnish Company, was and still is engaged in the manufacture and sale of paints and a caulking compound. To stimulate consumption of the compound the Calbar Company was anxious to find an efficient device for its application. They had tried some of the caulking guns then

on the market, but none of these had proved satisfactory. Consequently the Calbar Company entered into an agreement with defendant for the manufacture of an improved gun. Defendant developed a gun in conformity with the specifications of the company, and by November, 1934, defendant's patent thereon was a certainty. Thereupon, the Calbar Company entered into a contract with defendant under date of November 26, 1934, setting up a joint venture to market the patented gun. Defendant assigned his patent to the Calbar Company, but reserved the exclusive right to manufacture the gun. In consideration the Calbar Company bound itself to pay defendant $1,000, plus royalties, each year for the life of the agreement, with a guaranteed yearly minimum. The Calbar Company, assured of the exclusive sales agency, agreed to furnish the money necessary to manufacture and market the gun. In addition, it promised not to sell a similar device of any other manufacturer. Thereafter, the parties orally agreed that the gun should be placed on the market by a partnership composed of the individual plaintiffs, who were officers of the Calbar Company, under the name Albion Manufacturing Company. This name was adopted for the purpose of distribution, since the Calbar Company did not wish it known that it was actually promoting the sale of a caulking gun. Upon the formation of the partnership, the Calbar Company assigned all its rights and interests under the contracts to plaintiffs.

It is clear from the evidence that the whole basis of the understanding between the parties was that thereby plaintiffs were enabled to secure defendant's patented gun. The agreement itself expressly so recited. Plaintiffs in advertising the gun emphasized the patented features and specifically referred to the patent by number. Defendant, in turn, found in the relationship the best means of making his patented product known to the trade. At no time did he give plaintiffs to understand that he had surrendered the right to use the name

"Albion" or that he was in any manner conferring upon them the exclusive right to appropriate that name. It was entirely without defendant's knowledge or consent, therefore, that on February 4, 1936, plaintiffs surreptitiously succeeded in obtaining registration of the trademark "Albion" to identify the gun sold by them.

Differences which arose between the parties resulted in a termination of their contract on April 11, 1936. By a written agreement it was provided that the contract of November 26, 1934, "shall be cancelled in its entirety and surrendered up and hereafter considered null and void." It was also provided that defendant should retain all the machinery, including the dies bearing the imprint "Albion," the jigs, tools and fixtures, and in addition all materials, cartons and literature, which defendant then had on hand. By the terms of the contract, plaintiffs further agreed to reassign the patent to defendant and to release all their rights thereunder. Two months later plaintiffs executed a formal instrument, making the reassignment and releasing all claims growing out of the patent. From the time of the dissolution, defendant manufactured the gun in his own right under his patent, and advertised and sold it as the "Albion" gun. Plaintiffs purchased guns from other manufacturers and advertised and sold them under the name "Albion," claiming to have retained the right to that trade name.

Upon these facts, the following conclusion of the lower court is inescapable: "It is apparent, therefore, that defendant has been the sole owner of the gun covered by his patent since April 11, 1936, by assignment from the plaintiffs, and it is also apparent that prior to April 11, 1936, the trade name 'Albion' was always used to designate the gun which was originally patented by the defendant, and, since the plaintiffs immediately assigned to the defendant the patent rights in the said gun and also assigned to him at the same time the materials in the plant, it is difficult to see how they could retain the

exclusive right to the use of the trade name which had always been applied, advertised and sold as the gun covered by the patent issued to the defendant."

The conveyance of the patent and machinery by plaintiffs to defendant, with the exclusive right to manufacture and sell the "Albion" gun, was intended to include a transfer of all plaintiffs' interest in the trade-mark. A trade-mark, as an abstract right, has no existence apart from the business in which it is used: *Falk v. The American West Indies Trading Co.*, 180 N. Y. 445. In *Laughman's Appeal*, 128 Pa. 1, 18, this court said: "Trademarks are the proper subject of assignment, to the extent, at least, that unless reserved they pass with an assignment of business: Sebastian on Trade-marks, 236; and the assignment by one partner of all his interest in a firm to his copartners will carry with it the exclusive use of the trade-mark of the firm: *Menendez v. Holt*, 128 U. S. 514."

Plaintiffs' contention that they alone have the right to the use of the mark, and that they can use it on any gun, would permit them to trade on defendant's reputation and would violate a cardinal principle of trade-mark protection, namely, that the granting of relief is predicated upon a showing that public confusion as to the source would be eliminated as a result of the court's action: *Stroehmann Brothers Co. v. Manbeck Baking Co.*, 331 Pa. 96. As stated in the Restatement of Torts, Section 715, comment b: "In law, the fundamental theory upon which the interest in a trade-mark is protected is that a trade-mark identifies the goods coming from a particular source, or passing through a particular channel of distribution, and that an infringing designation tends to divert custom from that source by falsely representing that other goods come from it. But this theory does not mean that the trade-mark indicates a source known to purchasers. It means only that a trade-mark indicates that the goods in connection with which it is used come from a common source, whether the source

is known or anonymous, that one article of a class of goods bearing the trade-mark comes from the same source as all other articles of that class which bear the same trade-mark." The retention and use of the mark by plaintiffs, divorced from the patented article which it signified and upon which the consumer had come to rely, could only result in a fraud upon purchasers. Instead of the genuine "Albion" gun which they would believe they were receiving from plaintiffs, they would be getting another and different gun which plaintiffs had obtained from some other source. Since plaintiffs have no right to sell the genuine "Albion" gun, in selling another gun under that name, they are involved in a misrepresentation of wares and a deception of the public.

To hold that the trade-mark could have an existence independent of defendant's continuing business, which was the common source of the goods in connection with which the trade-mark "Albion" had been used, would thus run counter to the fundamental rules of trade-mark protection. We must, therefore, conclude that the name had become an integral part of the gun, and, when the patent and all the machinery and equipment necessary to manufacture the article were reassigned to defendant, the right to use the name passed with them.

Decree affirmed, costs to be paid by appellant.