## Peters, Appellant, *v.* Machikas.

Argued April 13, 1954. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Joseph Rappaport*, with him *Samuel Blank* and *Rappaport, Lagakos & Blank*, for appellant.

*Horace M. Barba,* with him *Barba & Eiseman,* for appellees.

OPINION BY MR. JUSTICE BELL, June 2, 1954:

Platon Peters, an individual trading under the fictitious name of "Majestic Restaurant" which is located at 2442 Kensington Avenue, Philadelphia, filed a complaint in equity to restrain defendants, who are also engaged in the restaurant business at 3171 Kensington Avenue, Philadelphia, from using the trade name of "Majestic Grille". Defendants' restaurant is on the same street as plaintiff's, approximately 7 blocks away.

We summarize the Chancellor's findings:

In 1924 plaintiff, defendant Machikas, and George Anagnastou formed a partnership to operate a restaurant under the name of "Majestic Restaurant" at 2442 Kensington Avenue, Philadelphia. In 1932 that partnership established another restaurant under the name of "Majestic Restaurant" at 13th and Arch Streets. In 1936 that partnership established another restaurant under the name of "Majestic Restaurant" at 3171 Kensington Avenue, where defendants at the present time conduct their restaurant.

In 1949 the partnership sold a one-half interest in the restaurant at 3171 Kensington Avenue to James Krassas and the name of the restaurant was changed to "Betsy Ross Restaurant".

On February 9, 1950 the partnership was dissolved and the assets distributed as follows: Plaintiff was given the restaurant located at 2442 Kensington Avenue, *known as the "Majestic Restaurant";* defendant Machikas was given the restaurant at *3171* Kensington Avenue *known as the "Betsy Ross Restaurant"* and other assets not here relevant. One paragraph of the agreement of dissolution provided that "Peters [plain-

tiff] shall have the full right to the name of *Majestic Restaurant at 2442 Kensington Avenue and elsewhere."*

In August, 1952 defendants (Machikas and his partner Kellos) commenced using the name "Majestic Grille" for their restaurant at 3171 Kensington Avenue. We note that defendants could not use, under Machikas' agreement with Peters, the name "Majestic Restaurant"; and the question arises whether "Majestic Grille" is, under the facts in this case, so similar as reasonably likely to confuse or deceive prospective customers or otherwise harm the plaintiff.

The Chancellor further found that the plaintiff has spent approximately $20,000. in improving his restaurant and in purchasing new equipment; and that he has also expended unknown sums of money for advertising his restaurant by the distribution of handbills and certain novelties in northeast Philadelphia. Defendants took into their employ certain employees formerly employed by plaintiff in his restaurant at 2442 Kensington Avenue, although the Chancellor did not pass upon plaintiff's allegation that these employees were "pirated" by defendants.

One of the Chancellor's most important findings of fact (which is unchallenged) was that defendants' restaurant has a large neon sign in the window bearing the word *"Majestic"* in letters *10 to 12 inches in height,* and the word "Grille" in letters 3 or 4 inches in height; and that defendants also have a sign in their window reading *"Majestic Restaurant".* This is certainly very improper, very misleading and deceiving, and undoubtedly very detrimental to the interests of the plaintiff, as well as a violation of the Fic-

---

* Italics throughout, ours.

titious Names Act under which defendants (and plaintiff) were registered.

The Chancellor further found that there was no satisfactory evidence that the defendants' use of the name "Majestic Grille" has caused any confusion among customers, tradespeople and other persons dealing with plaintiff, or that defendants' business is in competition with plaintiff's business, or that defendants' use of the name "Majestic Grille" was used with intent to injure or defraud plaintiff.

Findings of fact made by a Chancellor who saw and heard the witnesses, when confirmed by the Court en banc, will not be reversed on appeal if they are supported by adequate evidence: *Pregrad v. Pregrad,* 367 Pa. 177, 80 A. 2d 58; *Barrett v. Heiner,* 367 Pa. 510, 80 A. 2d 729. However, that well-settled principle is confined to findings which are true and genuine findings of fact. "With respect to [a] inferences and deductions from facts and [b] conclusions of law, both the Court en banc and the appellate Courts have the power to draw their own inferences and make their own deductions and conclusions: Barrett v. Heiner, 367 Pa. 510, 80 A. 2d 729; Noonan Estate, 361 Pa. 26, 63 A. 2d 80; Payne v. Winters, 366 Pa. 299, 77 A. 2d 407; Smith v. Smith, 364 Pa. 1, 70 A. 2d 630.": *Kalyvas v. Kalyvas,* 371 Pa. 371, 375-376, 89 A. 2d 819.

We cannot agree with several of the Chancellor's conclusions. Defendant, Machikas, was asked the following questions: "Q. Why did you change the name from Betsy Ross to Majestic Grille? A. Well, the reason why, because that fellow, you know, he make the place a wreck out of it and I put my name on it, Majestic, because people know me over there for thirty years. That is why. . . . Q. Why didn't you call it the Majestic Restaurant instead of the Majestic Grille? A. Well, I talked with my partner and we say we put

Majestic Grille. Q. Why did you say Grille? You always used the word restaurant. . . . Q. Didn't you use Majestic Restaurant all the time since you were in business? Isn't that what you said? A. I was interested with Majestic because every place I was I call it Majestic. Q. But you called it Majestic Restaurant, didn't you, all the time? A. That's right. Q. Why did you change it suddenly to Majestic Grille in August or September of 1952? A. Also I got the sign up there. *I put restaurant, too.* Q. All right. Why did you register as Majestic Grille instead of Majestic Restaurant? BY THE COURT: Q. Can you tell us why you preferred to use the name grille instead of restaurant? A. *As long as I put the Majestic—* Q. What? A. *I don't think it was different.* . . . Q. But why didn't you use restaurant? You have got a restaurant there; isn't that so? Why didn't you use Majestic Restaurant? A. *Well, on the sign up there it says restaurant,* and then the window it says Majestic Grille. Q. You got a big neon sign in the window saying Majestic Grille? A. That's right. BY THE COURT: Q. *But you have another sign on the premises which says Majestic Restaurant?* A. *That's right.* . . ."

It is clear from defendant's own testimony that the 12 inch-high word "Majestic" is the key word he was interested in and wanted; and that he didn't think the word "Grille" was different from "Restaurant"; and that he used the sign "Majestic Restaurant" in his window. How, in view of that testimony, is it possible to defend defendants' change of name from "Betsy Ross" to "Majestic Grille" or "Majestic Restaurant", or to find that Machikas did not intend to break his agreement with plaintiff, or did not intend to injure plaintiff, or to divert plaintiff's business to the defendants.

While the Chancellor did not consider the evidence was sufficient to establish confusion among customers and tradespeople between plaintiff's restaurant and defendants' restaurant, credible witnesses did testify that bills for food delivered to defendants were erroneously sent to plaintiff; that people telephoned plaintiff asking whether this was defendants' "Majestic Restaurant"; that food was delivered to plaintiff that was intended to be delivered to defendants; and that the Bureau of Assistance called several times to check on employment involving persons employed or seeking employment at defendants' "Majestic Restaurant". All of this occurred within the period of two months prior to this suit. Considering the difficulty of proving confusion (and loss of trade, as to which there was inadequate evidence) we consider this testimony was both important and adequate.

In *KoolVent Metal Awning Corp. v. Price,* 368 Pa. 528, 84 A. 2d 296, this Court held that the trade mark "Kool-Vent" was not infringed by the use of the name "Cool-Ray", and said (pp. 532, 533, 534): "The law in this class of cases is well established; its application to different facts and circumstances is sometimes difficult. Descriptive, geographical and generic words, as well as words of common or general usage belong to the public and are not capable of exclusive appropriation by anyone. This general principle is subject to the limitation or exception that if a trade name or trade-mark or other word or words have acquired, in the trade and in the minds of the purchasing public, a special so-called secondary meaning, i.e., have come to mean that the article is the product of a certain manufacturer or of a particular individual or corporation, such trade name or trade-mark or word or words will be protected against infringement: Quaker State Oil v. Steinberg, 325 Pa. 273, 189 A. 473; Kel-

logg Co. v. National Biscuit Co., 305 U. S. 111; Thomson-Porcelite Co. v. Harad, 356 Pa. 121, 51 A. 2d 605; Strochmann Brothers Co. v. Manbeck Baking Co., 331 Pa. 96, 200 A. 97. Even though a word or phrase or mark has acquired a special or secondary meaning, the right of protection does not extend a monopoly to every word in the name, *but the protection will be afforded only against names or marks which are deceptively similar thereto and consequently are likely to confuse the public*: Quaker State Oil v. Steinberg, 325 Pa., supra. . . .

"While the chancellor found as a fact that there was no intent to deceive, an actual intent to deceive is not indispensable: American Clay Mfg. Co. v. American Clay Mfg. Co., 198 Pa. 189, 47 A. 936. All that is necessary is that the court shall find from the evidence that *the name* or mark or label, *or the conduct and practices of the defendant actually confused and deceived or that it is reasonably likely that the average purchaser will be deceived;* possibility that purchasers will be misled is not enough: Stroehmann Brothers Co. v. Manbeck Baking Co., 331 Pa. 96, 98, 200 A. 97; Thomson-Porcelite Co. v. Harad, 356 Pa. 121, 51 A. 2d 605; Quaker State Oil v. Steinberg, 325 Pa. 273, 189 A. 473."

We find that the use of the name "Majestic Grille" together with the conduct and practices of these defendants actually have or it is reasonably likely that they will confuse and deceive the average prospective customer of plaintiff's and the public generally; and that the use of the words "Majestic Restaurant" or "Majestic Grille" is unfair competition which is detrimental to plaintiff and cannot be tolerated.

For these reasons the decree of the Court below is reversed, with directions to enter a decree consistent with this Opinion; costs to be paid by defendants.

DISSENTING OPINION BY MR. JUSTICE JONES:

I would affirm the decree of the court below on the adjudication and opinion of President Judge Mac-Neille whose findings of fact are supported by the evidence, and were confirmed by the court en banc, and whose inferences from the basic findings are neither so unreasonable nor illogical as to justify their being rejected upon appellate review.

Mr. Justice ALLEN M. STEARNE and Mr. Justice CHIDSEY join in this dissent.