QUALITY COURTS UNITED, Inc., Plaintiff,

v.

QUALITY COURTS, Inc., Defendant.

Civ. A. No. 5064.

United States District Court
M. D. Pennsylvania.

March 15, 1956.

Albert Aston, Andrew Hourigan, Jr., Allan M. Kluger, Wilkes-Barre, Pa., John Trenam, Tampa, Fla., for plaintiff.

Arthur A. Maguire, Joseph Serling, Wilkes-Barre, Pa., for defendant.

JOHN W. MURPHY, Chief Judge.

Plaintiff seeks to enjoin defendant from infringement of its registered trade mark and from unfair competition in the use of its trade mark, trade name, service mark and collective mark.[1] Jurisdiction arises from diversity of citizenship and the requisite amount in controversy, 28 U.S.C.A. § 1332(a) (1); and the presence of a federal question[2] joined with a claim of unfair competition, 28 U.S.C.A. § 1338(a, b). The case was tried to the court without a jury. The record consists of the pleadings, notes of testimony, and various exhibits. After appraising the evidence offered by and on behalf of the plaintiff, defendant did not offer any testimony. Based on the uncontradicted evidence, we make the following findings of fact.

1. Plaintiff did not press its claim for an accounting or damages.

2. See Lanham Trade-Mark Act of 1946, 15 U.S.C.A. § 1051 et seq.; as to jurisdiction, 15 U.S.C.A. § 1121, Steele v. Bulova Watch Co., Inc., 1952, 344 U.S. 280, at page 284, 73 S.Ct. 252, 97 L.Ed. 252.

344

## Findings of Fact

1. Plaintiff, Quality Courts United, Inc., is a non-profit corporation organized and existing under the laws of the State of Florida since its incorporation on August 16, 1941. (An amendment to the charter was approved and filed December 16, 1953.)

2. Defendant, Quality Courts, Inc., incorporated under the laws of Pennsylvania on August 1953 has its principal office and place of business in Dallas, Pennsylvania, in this district, where it opened to the public on January 1, 1954, a newly constructed 24 unit motel.

3. Plaintiff and its immediate predecessor, Quality Courts United, an unincorporated association, have been actively connected with the motor court business since 1939.

4. The name "Quality", "Quality Court", "Quality Courts", "Quality Courts United" had never been used in connection with any motor court business prior to its adoption by plaintiff and its predecessor.

5. The purpose for which its predecessor was organized and plaintiff incorporated and for which it presently exists is to improve motor court business and facilities and to create and maintain through enforcement of high standards for member courts a reputation for excellence for the names Quality Court, Quality Courts, Quality Motor Court and Quality Courts United, so that the traveling public will associate with such names high standards of motor court accommodations and patronize motor courts owned by members of plaintiff's organization.

6. Plaintiff does not itself own or operate any motor courts. It simply prescribes standards of facilities and operation for motor courts which enjoy membership in plaintiff organization and conducts advertising and promotional activities for such courts.

7. Membership in plaintiff organization, upon approval by the Board of Directors, may be obtained and retained only by an individual with respect to a particular motor court. Payment of dues, compliance with the by-laws and maintenance of prescribed standards are requisites of continuing membership.

8. December, 1945, plaintiff organization had 51 members. January 1, 1954, there were 390 members in twenty-six states and two provinces in Canada. May, 1955, plaintiff had 430 members.

9. In the fall of 1953 there were nine member courts in Pennsylvania; thirty-eight in immediately contiguous states. At the time of trial there were sixteen member courts in Pennsylvania; forty-one in the surrounding states.

10. The competitive territory of a motor court covers a wide area. Potential customers are those in fast moving vehicles traveling long distances. Within one hundred miles competition is intense; less so over a one day driving area, about four hundred to six hundred miles.

11. Each year, at substantial cost, plaintiff publishes and distributes guide books which list the names and locations of member courts. The purpose of these guide books is to provide the traveling public with reliable, conveniently arranged information as to excellent motel accommodations; to advertise and promote courts which enjoy membership in plaintiff organization. Fifty thousand (50,000) copies were published and distributed in 1941. The number increased from year to year so that in 1954, 4,128,000 copies were published and distributed at a cost of $106,889.30. Since 1939 eighteen different guide books were published and distributed at a cost in excess of a quarter million dollars. 3,500,000 copies were contracted for in 1955.

12. In addition to the expenditures for guide books, plaintiff has spent large sums advertising and promoting member courts. Member courts have likewise spent considerable sums advertising their facilities and services and membership in plaintiff organization. Apart from time, money and services of the individual members over the years the organization spent $603,395.11 promoting its good will and reputation and that of its individual members. For

1955 alone $125,000 was budgeted for newspaper advertising.

13. Advertising media employed include travel guides, newspapers, posters, billboards, metal emblems, trade journals, and nationally circulated magazines.

14. Articles concerning or referring to plaintiff organization have appeared in Motor Court Age, December 1946 and 1947; American Motels, December 1947, April 1955; Tourist Court Journal, December 1949; The Saturday Evening Post of July 5, 1947 and of July 18, 1953; Readers' Digest of September 1947; Fortune of August, 1951; Esquire, Pageant, Pathfinder and Town Journal of June, 1954. In October 1954, an article on American Motels, including plaintiff organization, appeared in a magazine, Scottish Field, published and circulated in Scotland.

15. The name of plaintiff organization is considered by the American Automobile Association—which lists practically all of plaintiff's members' courts in its travel guides—five or six million copies annually—to be a mark of distinction.

16. During 1954, members of plaintiff organization served some 6,000,000 persons representing estimated gross receipts of $22,000,000.00.

17. Through service including its advance registration program and accommodations of uniformly excellent standards, and through proper advertising and generally outstanding public relations, plaintiff's members' courts have built up a large clientele.

18. Because of the good will achieved, greatly increased patronage and net income obtained, membership in plaintiff organization increases the sale price of member courts although membership is not per se transferable.

19. Each member court is designated and certified as such to the traveling public by a large metal emblem prominently displayed containing the words "Quality Courts". Each court must be inspected and reapproved annually.

20. Since 1941 plaintiff has used a seal as a symbol or emblem together with other media to advertise the organization and its member courts.

21. To protect the name Quality Courts and the emblem of the organization, under authority granted June 3, 1950, an application for registration of a collective mark for services was filed with the United States Patent Office on February 19, 1952, and registered under the Trade Mark Act of 1946 on the principal register on June 25, 1954. June 2, 1952, an application for a trade mark was likewise filed and registered on August 18, 1953.

22. It has become common practice for motor court patrons and travel editors and authors and those connected with the motor court industry to identify member courts of plaintiff organization simply as "Quality Courts" and to speak of "traveling Quality" when signifying use of plaintiff's members' courts on automobile trips.

23. In front of its motel defendant displayed a large neon sign containing the words or name "Quality Courts". Several billboard advertisements and telephone directories carried the same name. On soap wrappers defendant used the name Quality Courts Inc.; on stationery, Quality Court Motel, Inc.; on registration cards, business cards and envelopes, match book covers and telephone directories, Quality Courts Motel, Inc.

24. Defendant's president having made a trip to Florida during 1953 thereafter knew, or was in a position to know, of plaintiff organization and its well publicized name prior to defendant's adoption of the word "Quality" as an integral part of its name.

25. Plaintiff did not consent to or acquiesce in defendant's use of the word "Quality" in its name. Upon discovery of such use, plaintiff, by letter to defendant dated January 26, 1954, registered objection with respect thereto. Thereafter, plaintiff made numerous requests and demands upon defendant for elimi-

nation of the word "Quality" from defendant's name. These requests and demands were ignored or rejected by defendant.

26. Defendant's adoption and use in substantial entirety of plaintiff organization's name has confused and deceived and tends to confuse and deceive members of the traveling public by generating the false belief or impression among travelers that someone connected with the defendant enjoys membership in plaintiff organization.

### Conclusions of Law

1. The Court has jurisdiction over the parties and subject matter.

2. By virtue of long use, advertising, and other promotional activities of the plaintiff organization, the word "Quality" as used in connection with motor courts has acquired a secondary meaning, such word being associated in the minds of automobile travelers with courts owned by members of plaintiff organization.

3. Plaintiff has acquired a valuable property right in its name as such is related to the motor court business in the United States and for present purposes in Pennsylvania in particular.

4. Plaintiff's right to the natural expansion of its trade territory embraces that territory in which defendant's motor court is located.

5. By adoption of plaintiff's name in substantial entirety, defendant has, to its unjust enrichment, passed off its services as those of a member of plaintiff organization, thereby appropriating to itself the good will and reputation of the business of plaintiff and its constituent members.

6. The defendant's use of the names "Quality Courts", "Quality Courts, Inc.", "Quality Courts Motel", "Quality Court Motel, Inc." and "Quality Courts Motel, Inc." in describing or advertising its motor court infringes plaintiff's collective mark for services and its trade mark. Such use has up to the time of trial and unless enjoined will continue to deceive, mislead and confuse substantial numbers of the traveling public and constitutes unfair competition with plaintiff organization.

7. Defendant, its agents, and employees, should be restrained from using the names "Quality", "Quality Court", "Quality Courts", "Quality Motel" or any other similar name in any manner in connection with defendant's motel or related business.

8. The plaintiff is not entitled to an accounting or to damages.

### Discussion

While the complaint spoke in terms of trade name, trade mark and service mark, actually plaintiff registered a trade mark and a collective mark (services), the trade mark referring to plaintiff's goods; the collective mark describing the services as "Providing Lodging in Tourist Courts in Class 100"; "Courts" was disclaimed from the mark in its entirety.[3] See and cf. 15 U.S.C.A.

---

3. In each instance the mark was shown as ;trade mark

a seal, symbol or emblem; the collective mark See and cf. Estate of Beckwith, Inc., v. Commis

as

sioner of Patents, 1920, 252 U.S. 538, 40 S.Ct. 414, 64 L.Ed. 705; Restatement Law of Torts, §§ 715, 724; Q-Tips, Inc., v. Johnson & Johnson, 3 Cir., 1953, 206 F.2d 144. Cf. Commentary, mark to the goods, use of the mark on displays associated with the goods is sufficient to supra, 15 U.S.C.A. at p. 268, "Whereas the prior Acts required physical affixation of the comply with the present Act. * * * With regard to use of a service mark, the only requirement is that the services in connection with which the mark is used must be rendered in commerce. Any use of a mark identifying services, whether in advertising, on invoices, letterheads, or the like, satisfies the terms of the statute, provided the services are rendered in commerce."

§ 1053; Application of Radio Corporation of America, 1953, 205 F.2d 180, 40 C.C.P.A.Patents, 1025; Springfield Fire & Marine Ins. Co. v. Founders' Fire & Marine Ins. Co., D.C.N.D.Cal.S.D.1953, 115 F.Supp. 787, 793, 794; Household Finance Corp. v. Federal Finance Corp., D.C.Ariz.1952, 105 F.Supp. 164; 15 U.S. C.A. § 1054; R. M. Hollingshead Corp. v. Davies-Young Soap Co., 1941, 121 F. 2d 500, at page 504, 28 C.C.P.A.Patents, 1286; 15 U.S.C.A. § 1127, and see Commentary Id. p. 265 at page 269.

"A service mark is a mark which identifies and distinguishes services and includes various distinctive features of advertising which identify a service * * *." "A collective mark is a mark used by the members of a cooperative, association or other group or organization to identify and distinguish the goods or services of such members and includes marks used to indicate membership in a union or other organization * * *." "* * * If the mark is used by the organization itself to identify its own goods or services * * * it is a trade-mark or service mark, as the case may be, and not a collective mark." [4]

Apart and distinct from the substantive rights arising from registration (see 15 U.S.C.A. § 1072, constructive notice to infringers; § 1065, incontestability, and § 1115, presumption of validity; General Electric Co. v. Schwartz, D.C.E.D.N.Y.1951, 99 F.Supp. 365, at page 368)[5] and expansion of jurisdiction under the statute (see 15 U.S. C.A. § 1127 and Commentary, Id. p. 284; Conde Nast Publications, Inc., v. Vogue School of Fashion Modelling Inc., D.C.S.D.N.Y.1952, 105 F.Supp. 325, at page 327)—all three marks and plaintiff's trade name, if the facts warrant, are entitled to protection under the broader law as to unfair competition, Armstrong Paint & Varnish Works v. Nu-Enamel Corp., 1938, 305 U.S. 315, at pages 324–325, 59 S.Ct. 191, 83 L.Ed. 195; Hanover Star Milling Co. v. Metcalf, 1915, 240 U.S. 403, at page 413, 36 S.Ct. 357, 60 L.Ed. 713; Bond Stores, Inc., v. Bond Stores, Inc., 3 Cir., 1939, 104 F.2d 124, 125; House of Westmore, Inc., v. Denney, 3 Cir., 1945, 151 F.2d 261, at page 265; B. V. D. Co. v. Kaufmann & Baer Co., 272 Pa. 240, 116 A. 508; Pennsylvania Central Brewing Co. v. Anthracite Beer Co., 1917, 258 Pa. 45, 101 A. 925; Thomson-Porcelite Co. v. Harad, 1947, 356 Pa. 121, at page 124, 51 A.2d 605; Coca-Cola Co. v. Busch, D.C.E.D.Pa.1942, 44 F.Supp. 405, 407. Since the results would be the same under state and federal law we need not decide the very nice question of which law should be applied. Cf. Commentary 15 U.S.C.A. pp. 265–288; S. C. Johnson & Son Inc. v. Johnson, 2 Cir., 1949, 175 F.2d 176, at page 178; Dad's Root Beer Co. v. Doc's Beverage, Inc., 2 Cir., 1951, 193 F.2d 77, at page 80; Stauffer v. Exley, 9 Cir., 1950, 184 F.2d 962, at page 964; Steele v. Bulova Watch Co., Inc., 1952, 344 U.S. 280, at page 283,

4. Id. at p. 270. "A certification mark is a mark used in connection with the goods or services of any person other than the owner of the mark to certify regional origin, quality, accuracy, material, mode of manufacture, production by union labor, or other characteristics of the goods or services." "Service marks and certification marks are new to our statutory law. Provision was made for registration and protection of collective marks by the amendment of June 10, 1938 to the Act of 1905, but since they have not heretofore been defined, this class of marks may also, for all practical purposes, be considered new. These three classes of marks have been given protection under the common law, but they now have a new status under statutory law."

5. See Commentary, supra, at p. 280, "The greatest single advantage of a principal registration is that it is constructive notice of the registrant's claim of ownership of the mark * * *." Subsequent use of the mark by another "* * * * is an unlawful use and cannot be justified by a claim of innocence, good faith or lack of knowledge." "* * * a principal registration is prima facie evidence of ownership, validity of the registration and of the registrant's exclusive right to use the mark in commerce * * *."

note 6, 73 S.Ct. 252, 97 L.Ed. 252; Goebel Brewing Co. v. Esslingers, Inc., 1953, 373 Pa. 334, at pages 340, 341, 95 A.2d 523; Pecheur Lozenge Co. Inc. v. National Candy Co. Inc., 1942, 315 U.S. 666, 62 S.Ct. 853, 86 L.Ed. 1103; Campbell Soup Co. v. Armour & Co., 3 Cir., 1949, 175 F.2d 795, 796; Q-Tips, Inc., v. Johnson & Johnson, supra, 206 F.2d 144; Esquire, Inc., v. Maira, D.C.M.D. Pa.1951, 101 F.Supp. 398, at page 401; Lone Ranger, Inc., v. Currey, D.C.M.D. Pa.1948, 79 F.Supp. 190, at page 196; Sears Roebuck & Co. v. Johnson, 3 Cir., 1955, 219 F.2d 590, at page 592.

■ We need not pause to determine whether or not "Quality" constituted a proper trade mark or a proper subject for registration.[6] Its use was fanciful and arbitrary, not to indicate quality merely but more so origin or ownership so as to distinguish plaintiff organization and the courts of its members from other organizations and other motor courts. See 15 U.S.C.A. § 1052(e), "merely descriptive"; Id. § 1065; § 1115(b), incontestability. Here plaintiff need not rely upon its statutory rights since its marks have acquired a secondary meaning indicating that courts so marked are those operated by members of plaintiff organization. Protection is then afforded not only as a matter of justice to the plaintiff but to prevent imposition upon the public. See Armstrong Paint & Varnish Works v. Nu-Enamel Corp., supra, 305 U.S. 315, at page 336, 59 S.Ct. 191; Standard Paint Co. v. Rubberoid Roofing Co., 7 Cir., 1915, 224 F. 695, at page 696; Socony-Vacuum Oil Co., Inc., v. Rosen, 6 Cir., 1940, 108 F.2d 632, at page 635; R. H. Macy & Co. Inc. v. Macy's Drug Store, Inc., 3 Cir., 1936, 84 F.2d 387; Grocers Baking Co. v. Sigler, 6 Cir.,

1942, 132 F.2d 498, at page 500; 68 Harvard L.Rev. 814 at page 823; Restatement Law of Torts, § 716, Comment (b), Note 150 A.L.R. 1067; Springfield Fire & Marine Ins. Co. v. Founders' Fire & Marine Ins. Co., D.C., 115 F.Supp. 787; Peters v. Machikas, 1954, 378 Pa. 52, at page 58, 105 A.2d 708; Quaker State Oil Refining Co. v. Steinberg, 1937, 325 Pa. 273, at page 279, 189 A. 473.

■ As the facts indicate, as a result of maintenance of excellent standards, continued exclusive use of the trade mark, collective mark, seal, symbol or emblem, and trade name, advertising through various media; discussion in magazines of national circulation, in the trade, and among the traveling public; millions of satisfied customers; plaintiff's trade name and several marks have acquired a secondary meaning, identifying motor courts which are through membership a part of plaintiff's organization, thereby enhancing plaintiff's and its members' good will, reputation and clientele. In accord, see Quality Courts United, Inc., v. Jones, Fla.1952, 59 So.2d 20; Quality Courts United, Inc., v. Bishop, Fla.1952, 59 So. 2d 23, and see Quality Courts United, Inc., v. Joseph E. McGlamery, et ux., No. 79843-C, March 16, 1948, C. C. of Hillsborough County, Florida (unreported).

■ With an infinity of names, real and fanciful, from which to choose, the defendant chose the name used by the plaintiff. The use of the word Quality in the advertising of a motor court, which is not through membership a part of the plaintiff organization, has prior to the trial and if not restrained in the future would necessarily tend to con-

---

6. See the rule of Mfg. Co. v. Trainer, 1879, 101 U.S. 51, at page 55, 25 L.Ed. 993, cf. dissenting opinion at page 58, of 101 U.S.; Canal Co. v. Clark, 1871, 13 Wall. 311, 80 U.S. 311, at page 323, 20 L.Ed. 581; Manhattan Medicine Co. v. Wood, 1882, 108 U.S. 218, at page 223, 2 S.Ct. 436, 27 L.Ed. 706; Menendez v. Holt, 1888, 128 U.S. 514, at page 520, 9 S.Ct.

143, 32 L.Ed. 526; Lawrence Mfg. Co. v. Tennessee Mfg. Co., 1891, 138 U.S. 537, 546, 11 S.Ct. 396, 34 L.Ed. 997; Dennison Mfg. Co. v. Thomas Mfg. Co., C.C.Del.1899, 94 F. 651, at page 657; Keebler Weyl Baking Co. v. J. C. Ivins' Son, Inc., D.C.E.D.Pa.1934, 7 F.Supp. 211, at page 212; Restatement Law of Torts § 721.

fuse, mislead and deceive large numbers of people—the general public, those in the industry, and particularly the traveling public—causing them to believe that the court in question was through membership affiliated with or a part of plaintiff organization, thereby infringing plaintiff's trade and other marks and trade name, and constituting unfair competition. See Restatement Law of Torts, § 729 (1938); Sears Roebuck & Co. v. Johnson, supra, 219 F.2d 590; Id., the names are not just similar, they are identical and used in the same market as to the same or similar services; cf. Goebel Brewing Co. v. Esslingers, supra, 373 Pa. at page 343, 95 A.2d 523; Standard Oil Co. of New York v. Standard Oil Co. of Maine, D.C.Me.S.D.1930, 38 F.2d 677, at page 678; American Automobile Ins. Co. v. American Auto Club, 9 Cir., 1950, 184 F.2d 407. at page 409; Socony-Vacuum Oil Co., Inc., v. Rosen, supra, 108 F.2d at page 636; Sears Roebuck & Co. v. Johnson, supra, 219 F.2d at page 592; Q-Tips, Inc., v. Johnson & Johnson, supra, 206 F.2d at page 147; R. H. Macy & Co. v. Macy's Drug Store, supra, 84 F.2d 387.

The growth and expansion of plaintiff and its members economically and territorially is amply demonstrated by the growth in numbers and widening of the territory over the years. Commencing with one member having a court at Gettysburg in Pennsylvania in 1939, the number increased to nine at various places in Pennsylvania in late 1953, immediately prior to the adoption of the name Quality Courts by defendant in its corporate charter; the number had increased to sixteen in 1955.

■ When a second user's appropriation of a trade name is in the territory which will probably be reached by a prior user in the natural expansion of his trade, or, a fortiori, if the second user's trade, though in another area, is in actual competition with the trade of the first user in his area, then relief will be granted the first user. Sweet Sixteen Co. v. Sweet "16" Shop, Inc., 8 Cir., 1926, 15 F.2d 920, at page 923;

White Tower System, Inc., v. White Castle System, etc., 6 Cir., 1937, 90 F.2d 67, at pages 68, 69; Food Fair Stores, Inc., v. Food Fair, Inc., 1 Cir., 1949, 177 F.2d 177, at page 183; Hub Clothing Co. v. Cohen, 270 Pa. 487, 113 A. 677; Restatement Law of Torts, § 732.

■ In applying this geographical test, consideration must be given to the nature of the businesses involved and the competitive area; a larger area of protection will be granted where the motoring public has carried the plaintiff's reputation to far distant points and where his business attracts customers from a large area. White Tower System, Inc., v. White Castle System, etc., supra, 90 F.2d 67; Hub Clothing Co. v. Cohen, supra, 270 Pa. 487, 113 A. 677.

In these days of fine highways and highpowered motor cars, the automobile traveler can and does traverse several hundred miles in a day's time. In selecting overnight sleeping accommodations, he is in nowise restricted to motels situated in a small area. If unsatisfied with the appearance or reputation of a particular motel, he can, within the space of a very brief time, seek accommodation many miles away. Further, with alternate routes available as between most major points in the United States, he may choose one rather than the other route simply to enjoy preferred motor accommodations.

As we have heretofore indicated, defendant operated under the same name in the same market—the same competitive area—offering motel service. Such conduct should be enjoined. See Grocers Baking Co. v. Sigler, 6 Cir., 1942, 132 F.2d 498, at page 502; Stork Restaurant, Inc., v. Sahati, 9 Cir., 1948, 166 F.2d 348, at page 358.

■ Neither incorporation per se, Local Loan Co. v. Local Finance Corp., D.C.E.D.Wis.1944, 56 F.Supp. 658, at page 661, nor use of a corporate name, Goodyear's India Rubber Glove Mfg. Co. v. Goodyear Rubber Co., 1888, 128 U.S. 598, at page 603, 9 S.Ct. 166, 32 L.Ed.

535; American Steel Foundries v. Robertson, 1926, 269 U.S. 372, 380, 46 S.Ct. 160, 70 L.Ed. 317, gives defendant any right to compete unfairly.

■ The essence of the wrong is the representation that defendant's court is in fact a member of plaintiff's organization. Canal Co. v. Clark, supra, 80 U.S. at pages 322, 323, 20 L.Ed. 581; Goebel Brewing Co. v. Esslingers, Inc., supra, 373 Pa. at page 342, 95 A.2d 523; B. V. D. Co. v. Kaufmann & Baer Co., supra, 272 Pa. at page 242, 116 A. 508.

■ The burden is on the defendant to justify unauthorized use of plaintiff's trade name and marks. Jacobs v. Beecham, 1911, 221 U.S. 263 at page 271, 31 S.Ct. 555, 55 L.Ed. 729; Sears Roebuck & Co. v. Johnson, supra, 219 F.2d at page 593. Defendant has not met that burden.

■ Whether innocent or not, Ettore v. Philco Television Broadcasting Corp., 3 Cir., 229 F.2d 481, 490; Sears Roebuck & Co. v. Johnson, supra, 219 F.2d at page 593; Peters v. Machikas, supra, 378 Pa. at page 59, 105 A.2d 708; Goebel Brewing Co. v. Esslingers, Inc., supra, 373 Pa. at page 345, 95 A.2d 523; Coca-Cola Co. v. Busch, supra, 44 F.Supp. 405, at page 409; Champion Spark Plug Co. v. Sanders, 1947, 331 U.S. 125, at page 130, 67 S.Ct. 1136, 91 L.Ed. 1386; Federal Trade Commission v. Winsted Hosiery Co., 258 U.S. 483, 42 S.Ct. 384, 66 L.Ed. 729; American Clay Mfg. Co. v. American Clay Mfg. Co., 1901, 198 Pa. 189, at page 193, 47 A. 936; Thomson-Porcelite Co. v. Harad, supra, 356 Pa. at page 125, 51 A.2d 605, since defendant's conduct has produced and is likely to produce confusion in the public mind, it constitutes unfair competition for which equity affords relief.

Defendant adopted and used the name without plaintiff's consent. As soon as plaintiff heard of defendant's conduct it protested, requested defendant to cease and failing therein brought the present action.

■ Where unfair competition is established any doubts as to the adequacy of relief are resolved against the transgressor. Champion Spark Plug Co. v. Sanders, Id., supra, 331 U.S. 125, 67 S.Ct. 1136; Warner & Co. v. Eli Lilly & Co., 1924, 265 U.S. 526 at page 531, 44 S.Ct. 615, 68 L.Ed. 1161; Stork Restaurant, Inc., v. Sahati, supra, 166 F.2d at page 359; see 15 U.S.C.A. §§ 1116, 1118, 1119; R. H. Macy & Co., Inc., v. Colorado Clothing Mfg. Co., 10 Cir., 1934, 68 F.2d 690, at page 692.

" * * * the tendency of the law * * * legislative and common, has been in the direction of enforcing increasingly higher standards of fairness or commercial morality in trade. The tendency still persists." Vol. 3, Restatement Torts, p. 540.

A decree in accordance with this opinion will be handed down this date.